UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PAUL ANTHONY RUPE,

          Plaintiff,

  vs.

M. CATE, R.J. SUBIA, M. MARTEL, D. LONG, KNIPP, P. VANNI, G. MACHADO, KUDLATA, CHAMBERLAIN, V. BUENO, B. BUENO, GREEN, RUTHERFORD, J. TEXEIRA, L. MARTINEZ, BAPTISTA, BARNHAM, KURIC, MUHAMMED, TAKEHARI, and LOCKHART,

          Defendants.

NO.  CV-08-2454-EFS

**ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO STRIKE**

     Before the Court, without oral argument, are Defendants' Motion to Dismiss (Ct. Rec. 33) and Motion to Strike (Ct. Rec. 34).  Plaintiff filed his Prisoner Civil Rights Complaint on October 16, 2008. Defendants filed the motions under consideration on August 10, 2009. For the reasons stated below, the Court grants and denies in part Defendants' Motion to Dismiss with prejudice in part and without prejudice in part, and grants Defendants' Motion to Strike.

ORDER - 1

# I. Background[1]

Plaintiff is a California state inmate and a practicing Druid. Druidism is a Neo-pagan religion that revives the beliefs and practices of the druids, who were the religious and educational leaders in ancient Gaul. Plaintiff has been in contact with the Order of Bards, Ovates, and Druids ("OBOD"), a Druid organization based in England, from which he obtained a correspondence course to assist his spiritual development. (Ct. Rec. 1 at 1-2.) Plaintiff also associated with members of other Pagan denominations while he was an inmate at Mule Creek State Prison ("MCSP"), including William Rouser and Douglas Hysell. *Id.* at 1. These two had founded a Pagan practice group, which Plaintiff joined.

After prison officials began harassing other members of the Pagan group, Plaintiff became concerned that he too would be victimized. On March 17, 2007, he wrote to State Senator Gloria Romero requesting various items necessary for Pagan religious worship. *Id.* at 4. A copy of the letter was given to Defendant Subia, the Warden at MCSP. *Id.* On the same day, Plaintiff filed an administrative grievance with MCSP officials in which he requested accommodations for Pagan worship. *Id.* That grievance was heard on April 2, 2007. *Id.* At the hearing, Defendant Long, an Associate Warden, informed Plaintiff that MCSP would approve the Pagan group's practices and would grant them a worship area. When Plaintiff complained that the proposed area was too small to

---

[1] The following facts from Plaintiff's complaint are accepted as true. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

ORDER - 2

accommodate all the Pagan worshipers, Long told Plaintiff to reduce his numbers. *Id.* Defendant then sent another letter to several state senators in which he described how Defendants failed to accommodate Pagan worship. Certain unspecified Defendants intercepted this letter.

Afterward, things only got worse for Plaintiff, as the letter led to more religious persecution designed to snuff out Pagan worship at MCSP. Plaintiff was subjected to a series of allegedly retaliatory actions for writing the letter and continuing to assert his rights to practice his religion. Plaintiff alleges Defendant Rutherford repeatedly strip-searched him, once in front of a female nurse, without any justification. *Id.* On June 6, 2007, Defendants Takehari and Lockhart searched Plaintiff's cell and removed several religious articles. *Id.* at 5. Plaintiff was placed in Administrative Segregation for complaining about the earlier adverse actions he suffered. Additionally, Plaintiff was issued a Rules Violation Report and penalized with yard and phone restrictions, but was not told what violation he committed. Defendant Kudlata allegedly told Plaintiff he would like to "lock all you Pagans up." *Id.* at 8. Defendants B. Bueno and Sgt. Green ordered all non-Wiccans off the Pagan worship area, effectively barring Druids from practicing their faith. Finally, Plaintiff filed multiple grievances related to the restrictions on his religious practice; the grievances were denied on appeal. *Id.* at 9–10.

According to Plaintiff, MCSP officials deny Druids and other Pagans many of the benefits they provide to other religious groups. Prison officials required the Druids to get copyright permission before making copies of the Druid correspondence course but had no similar

ORDER - 3

requirements for other religious practitioners. *Id.* at 10. Even after the Druids obtained copyright permission, Defendants did not allow them to make copies. *Id.* Additionally, Druids were denied funds to order religious items because they lack a chaplain, unlike other groups. *Id.* Similarly, Native American groups had ceremonial sweat lodges while Druids did not; all other religious groups had classroom time and state-funded religious feasts twice a year while Druids received neither; and the smaller Judeo-Christian groups had sufficient worship space for ninety individuals while the much-larger Druid group had enough space for only ten. *Id.*

Plaintiff brings six groups of claims against Defendants: 1) Defendants Cate, Martel, Long, Barnham, Baptista, Muhammad, and Korik violated his rights under the First and Fourteenth Amendments and Religious Land Use and Institutionalized Persons Act ("RLUIPA") by failing to accommodate Plaintiff's religious practices; 2) Defendants Long, R. Bueno, and Baptista violated Plaintiff's Equal Protection rights by attempting to reduce the number of Pagan practitioners at MCSP; 3) Defendants Long, V. Bueno, Takehara, Rutherford, Lockhart, Chamberlain, and Green retaliated against Plaintiff for First Amendment-protected activities; 4) Defendant Kudlata violated Plaintiff's First and Fourteenth Amendment rights by finding Plaintiff guilty of a rules violation; 5) Defendants Martinez, Texeira, Machado, Knipp, Long, Vanni, and Martel conspired to transfer Plaintiff out of MCSP in retaliation for First Amendment-protected activities; and 6) Defendants Martel, Subia, Long, and Knipp failed to supervise or correct their subordinates' violations of Plaintiff's First and Fourteenth Amendment

ORDER - 4

rights.

## II. Discussion

**A. Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555. In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

**B. Sufficiency of the Pleadings**

Defendants allege that Plaintiff's pleadings are inadequate in three respects: 1) Plaintiff has not pled any facts supporting his claims against Defendants Cate, Muhammad, Martinez, Texeira, Knipp, and Vanni; 2) Plaintiff's allegations regarding the remaining Defendants are vague and conclusory; and 3) Plaintiff has not pled sufficient facts to hold Defendants in supervisory positions liable under § 1983.

**1. Defendants Cate, Muhammad, Martinez, Texeira, Knipp, and Vanni**

Plaintiff has not adequately pled his claims against these

Defendants.  Aside from the section detailing his causes of action, *see* (Ct. Rec. 1 at 10-13), Plaintiff does not mention these Defendants by name in his entire recitation of facts.  Defendants correctly point out that Plaintiff concludes that these Defendants violated his rights, but nowhere indicates any specific action they took that constituted a violation.  In the section of his complaint detailing the damages he requests, Plaintiff includes a "formulaic recitation of the elements" of liability, but this is insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.  Accordingly, Plaintiff's claims against these Defendants are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint that will survive a motion to dismiss, he must include factual allegations showing a plausible basis for relief.

### 2.   Remaining Defendants

Defendants argue that Plaintiff's pleadings against the other Defendants are insufficient because, in the final section detailing all of Plaintiff's causes of action, they do not reference paragraphs detailing specific actions by each of these Defendants that give rise to Plaintiff's claims.  Although this is true, the Court finds good cause to construe Plaintiff's complaint liberally.  The facts section of Plaintiff's complaint describes specific actions these Defendants took to violate Plaintiff's rights.  (Ct. Rec. 1 at 3-10.)  Merely because references to specific paragraphs in the facts section are not included with the causes of action is not a reason to rule that Plaintiff's allegations are vague and conclusory.  Accordingly, Defendants' motion is denied with respect to claims against Defendants Subia, Martel, Long, Machado, Kudlata, Chamberlain, V. Bueno, B. Bueno, Green, Rutherford,

Baptista, Barnham, Kuric, Takehari, and Lockhart, subject to the limitations described below.

### 3. Supervisor Liability

Defendants argue that Plaintiff has pled insufficient facts for Defendants Martel, Subia, Long, and Knipp to be liable under § 1983 for their subordinates' constitutional violations. There is no respondeat superior liability under § 1983: liability arises only if the defendant personally participated in the violation in some way. *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680 (9th Cir. 1984) (citing *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980)); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Supervisors are liable for their subordinates' actions only if the supervisor participated in or directed the violations, or knew of the violations and did not prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The Court finds that Plaintiff sufficiently pled that Defendants Martel, Subia, and Long were aware of the violations and failed to prevent them. Plaintiff alleges that he wrote to Defendants Subia, Long, and Martel about the alleged violations. (Ct. Rec. 1 at 3-6.) Additionally, Plaintiff alleges that all these Defendants were "made completely aware of the inappropriate actions of their subordinates . . . but actively chose to be deliberately indifferent to these actions." (Ct. Rec. 1 at 14.) As discussed above, Plaintiff has not pled sufficient facts to support a claim against Defendant Knipp. But Plaintiff has pled that the rest of the supervisor Defendants are liable in their supervisory capacity for their failure to prevent known violations.

## C. Mootness

Plaintiff requests injunctive relief as part of his damages. (Ct. Rec. 1 at 11-12.) Defendants argue that Plaintiff has been transferred from MCSP to Los Angeles County State Prison, and his claims for injunctive relief are therefore moot.

Federal courts may hear only live cases and controversies. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Prisoners who have been released from prison or transferred to a different prison may not sue for injunctive relief because they would no longer benefit from having the injunction issued. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1970); *Johnson v. Moore*, 948 F.3d 517, 519 (9th Cir. 1991); and *Darry v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986)). Because Plaintiff is no longer housed at the institution where many of the alleged violations occurred, he may not sue to enjoin those violations specific to MCSP from recurring in the future. Although Plaintiff claims the transfers among prisons make the violations a wrong capable of repetition but evading review, the case law does not support this position. Even now, Plaintiff does not allege that he will likely be transferred back to MCSP. Although he claims others' rights are violated there now and all those who have attempted to sue have been transferred away, he does not allege that his rights are likely to be violated there again. *Cf. Dilley*, 64 F.2d at 1369 (holding that a prisoner's claim is moot if he has no reasonable expectation that he will be transferred back to the prison where it occurred). Plaintiff may amend his complaint to sue for injunctive relief if the conditions at the prison where he is currently

ORDER - 8

housed are similarly dissatisfactory.

On the other hand, Plaintiff may sue for injunctive relief to the extent he claims systemic discrimination against Pagans throughout the California Department of Corrections ("DOC"). Plaintiff alleges that the DOC has a policy of not providing "equal treatment or reasonable accommodations" to members of non-traditional religious groups. (Ct. Rec. 1 at 12.) Presumably, this policy forms the basis of his claim against Defendant Cate. Because Plaintiff is still incarcerated in a prison run by the DOC, his claims based on this alleged policy are not moot.

**D.  RLUIPA Claims**

Defendants argue that Plaintiff's claims under RLUIPA are barred for three reasons: 1) the Prison Litigation Reform Act ("PLRA") precludes suits for damages when no physical injury has been alleged; 2) there is no cause of action against a defendant in his individual capacity under RLUIPA; and 3) claims under RLUIPA against Defendants in their official capacity are barred by Eleventh Amendment sovereign immunity. Plaintiff alleges some of his claims against Defendants in both their individual and official capacities, and some in only one or the other. Because Plaintiff is proceeding pro se, the Court interprets his claims liberally as against all Defendants in both capacities. *See Karim-Pandhi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1998).

**1.  History of RLUIPA**

Passed in 2000, RLUIPA was one of a series of congressional attempts to protect religious exercise from government regulation. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). After *Employment*

ORDER - 9

*Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), in which the Supreme Court held that the Free Exercise Clause does not prohibit valid laws of general applicability that incidentally burden religious exercise, Congress responded with the Religious Freedom Restoration Act ("RFRA"). RFRA prohibits government from burdening religious exercise unless it is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000bb-1. It purported to apply to both state and federal governments. *Cutter*, 544 U.S. at 715. In *City of Boerne v. Flores*, 521 U.S. 507 (1997), however, the Supreme Court held that RFRA was not a valid exercise of Congress's Fourteenth Amendment powers, so it is not applicable to the states.

In order to avoid RFRA's constitutional infirmities, Congress, using its authority under the Spending and Commerce Clauses, enacted RLUIPA, which targets burdens on religious exercise in only two situations: land-use regulation and institutionalized persons. 42 U.S.C. §§ 2000cc, 2000cc-1. Under RLUIPA, government institutions that receive federal funding are prohibited from imposing a substantial burden on religious exercise of persons confined in institutions unless that burden is the least restrictive means of furthering a compelling government interest. *Id.* § 2000cc-1(a).

**2. PLRA**

RLUIPA does not modify the PLRA in any way. *Id.* § 2000cc-2(e). Under the PLRA, prisoners may not bring an action for mental or emotional injuries suffered while in custody unless they also can show physical injury. *Id.* § 1997e(e). However, the Ninth Circuit held that this section applies *only* where a plaintiff alleges mental or emotional

injuries. *See Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002). If a plaintiff claims violations of constitutional or statutory rights, this section does not bar claims for money damages. *Id.* Because Plaintiff alleges RLUIPA violations, and not mental or emotional injuries, § 1997e(e) does not bar his claims.

### 3. Claims Against Defendants in Their Individual Capacity

Whether RLUIPA allows actions against defendants in their individual capacity is unsettled. By its terms, the statute is based on Congress's legislative authority under the Spending Clause and the Commerce Clause. 42 U.S.C. § 2000cc-1(b). While it may be theoretically possible, religious exercise in prisons ordinarily does not implicate interstate or foreign commerce, and nothing alleged does so here. The Ninth Circuit upheld RLUIPA as a valid exercise of Congress's Spending Clause power as to RLUIPA's prohibitions of government infringement of religious exercise in prisons. *See Mayweathers v. Newland*, 314 F.3d 1062, 1066-70 (9th Cir. 2002).

Under the terms of the statute, persons may assert a RLUIPA violation against "a government." 42 U.S.C. § 2000cc-2(a). "Government" includes "any . . . person acting under color of State law." *Id.* § 2000cc-5(4)(A)(iii). Thus, the plain language of the statute suggests that there is a private cause of action against defendants in their individual capacity.

Despite this language, all the Courts of Appeals that have addressed the issue directly concluded that there is no cause of action against defendants in their individual capacity under RLUIPA. *See Rendelman v. Rouse*, 569 F.3d 182, 188 (4th Cir. 2009); *Nelson v. Miller*,

570 F.3d 868 (7th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007). The Fourth Circuit decided that there is no cause of action against individuals because the statute fails to notify individual defendants adequately that they could be liable under RLUIPA. *Rendelman*, 569 F.3d at 188. That court did not decide whether any statute passed under the Spending Clause could condition a state's receipt of federal funds on subjecting state officials to individual liability. *Id.*

In contrast, the Fifth, Seventh, and Eleventh Circuits based their decision on constitutional limits to Congress's Spending Power. While Congress has the authority to set conditions on the receipt of federal funds, *see South Dakota v. Dole*, 483 U.S. 203, 206 (1987), this power is limited. In order to be a valid use of the Spending Power, 1) the exercise must be in pursuit of the general welfare; 2) the conditions must be unambiguously indicated to the state recipients of federal funds; 3) the conditions must be related to federal interests in national programs; and 4) the use must not be otherwise unconstitutional. *Id.* at 207-8. Courts commonly liken the use of the spending power to a contract between the federal government and the states that receive its funds. *See*, *e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Only the parties to the contract must abide by its terms; only the states or institutions that receive the funds, and not their individual employees, must subject themselves to the federal government's conditions in order to receive its funds. *See Nelson*, 570 F.3d at 889; *Sossamon*, 560 F.3d at 328-29; *Allen*, 502

ORDER - 12

F.3d at 1275.

The Fifth Circuit went so far as to say that "important representation interests protected by federalism would be undermined" if Congress could use the spending power to create a private right of action against a defendant in his individual capacity." *Sossamon*, 560 F.3d at 329. The court explained that the states could accept federal funds with the condition that individuals are liable for money damages and blame Congress for the undesired liability. Similarly, Congress could blame the states for accepting the funds. This would allow Congress to "create liability on the basis of a law never enacted by a sovereign with the power to affect the individual rights at issue." *Id.*

In cases decided before RLUIPA, other circuits held that Title IX, which was enacted under the Spending Power, creates liability only in the direct recipients of federal funds, such as states and institutions, who fail to live up to the conditions: individual employees who do not receive federal funds directly cannot be liable. *See, e.g.*, *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999)*; Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607 (8th Cir. 1999); *see also Sherez v. Haw. Dep't of Educ.*, 396 F. Supp. 2d 1138, 1145 (D. Haw. 2005). The Supreme Court also held that only the states and institutions that directly receive federal funds are liable for damages under Title IX. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41 (1999) (citing *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 467 n.5 (1999)). These courts recognized that under the Spending Power, Congress may subject the recipient of funds to personal liability, but not the individual employees of those recipients because to do so would create

ORDER - 13

constitutional problems.

The Ninth Circuit has not addressed the issue explicitly.  In two opinions, two separate panels seem to have assumed the existence of a private cause of action against defendants in their individual capacity under RLUIPA because both panels engaged in a qualified immunity analysis.  *See Campbell v. Alameida*, 295 Fed. App'x. 130 (9th Cir. 2008); *Von Staich v. Hamlet*, Nos. 04-16011, 06-17026, 2007 WL 3001726 (9th Cir. Oct 16, 2007).  This analysis is necessary only in cases in which there is a damages claim against a defendant in his individual capacity because only individual defendants can have qualified immunity. Nevertheless, these cases are not controlling.  They did not hold explicitly that there is such a cause of action and, as unpublished dispositions, they are not binding precedent.  *See* 9th Cir. R. 36-3(a).[2]

The Court agrees with all the Courts of Appeals that have considered the issue of individual liability explicitly and holds that

---

[2] District courts within this circuit split on this issue.  *See*, *e.g.*, *Mauwee v. Donat*, No. 3:06-cv-01220-RCJ-VPC, 2009 WL 3062787, at *6 (D. Nev. Sept. 18, 2009) (holding that there is no cause of action under RLUIPA against defendants in their individual capacity); *Hundal v. Lackner*, No. EDCV 08-543-CAS (MAN), 2009 WL 2985448, at *4 (C.D. Cal. Sept. 15, 2009) (same); *Harris v. Schriro*, No. CV 06-0755-PHX-GMS (ECV), 2009 WL 2450423 (D. Ariz. Aug. 11, 2009) (same); *Sokolsky v. Voss*, No. 1:07 CV-00594 SMM, 2009 WL 2230871, at *6 (E.D. Cal. July 24, 2009) (allowing a RLUIPA claim for damages against defendants in their individual capacity).

ORDER - 14

RLUIPA does not support a cause of action against Defendants in their individual capacity. Using the Spending Power to hold liable individuals who do not directly receive federal funds would raise serious constitutional problems because Congress might exceed its Spending Clause authority if it did so. Under the avoidance doctrine, "which requires a statute to be construed to as to avoid serious doubts as to the constitutionality of an alternate construction," the Court finds that Plaintiff has no RLUIPA claims against Defendants in their individual capacity. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (citing *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)).

### 4. Sovereign Immunity

The Court understands from Plaintiff's complaint that he claims RLUIPA violations against Defendants in their official capacity. The Eleventh Amendment bars private citizens' claims against state governments. U.S. Const. amend. XI. As agents of the state, state employees sued in their official capacity also are protected by Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985). There are three principal exceptions to sovereign immunity. First, Congress may authorize the suit in a statute enacted under its Fourteenth Amendment powers. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Second, a state may waive its sovereign immunity by consent. *See Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). Third, a plaintiff may sue a state official for injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908).

To begin, the first exception will not apply because RLUIPA was

ORDER - 15

enacted under Congress's Article I powers of the Spending and Commerce Clauses, not the Fourteenth Amendment. *See* 42 U.S.C. § 2000cc-1(b). Legislation passed under Congress's Article I powers does not abrogate Eleventh Amendment immunity. *See Seminole Tribe*, 517 U.S. at 73. As detailed above, the third exception for injunctive relief applies to the extent that Plaintiff seeks a change in statewide policy regarding incarcerated Pagans' status, but not insofar as Plaintiff seeks to redress violations peculiar to MCSP.

The second exception applies to all of Plaintiff's claims, however. RLUIPA binds any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). It permits an action for "appropriate relief against a government" accepting these funds. *Id.* §2000cc-2(a). Courts construed these provisions to condition receipt of these funds upon waiver of immunity by the recipients. *See*, *e.g.*, *Sossamon*, 560 F.3d at 331. This Court agrees.

Although RLUIPA requires states that receive federal funds to waive sovereign immunity, it does not address the breadth of that waiver. It certainly is unclear that this waiver includes suits for money damages, and notice of all conditions on receipt of federal funds must be stated unambiguously. *Dole*, 483 U.S. at 206. Moreover, Congress may condition funds on a waiver of immunity from liability without requiring the recipients to waive immunity from suits for damages. *Lane v. Pena*, 518 U.S. 187, 196 (1996). Indeed, of the Courts of Appeals that considered the issue, one held that RLUIPA requires waiver of sovereign immunity in suits for money damages and two held that it does not. *See Sossamon*, 560 F.3d at 331 (holding that RLUIPA does not clearly require waiver of

immunity to suits for money damages); *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) (same); *Benning v. Georgia*, 391 F.3d 1299, 1305-07 (11th Cir. 2004) (holding that states are on clear notice that they have waived their immunity from suits for damages under RLUIPA by accepting federal funds).

Federal sovereign immunity cases inform this analysis because they are closely analogous to Eleventh Amendment sovereign immunity cases involving states. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 682 (1999). A waiver of federal sovereign immunity is strictly construed in favor of the federal sovereign. *Lane*, 518 U.S. at 192.

Because the language in the statute is unclear, the Court agrees with the Fourth and Fifth Circuits that recipients of federal funds are not subject to suits for money damages under RLUIPA. While the statute does say that aggrieved persons under the statute may receive "appropriate relief," 42 U.S.C. § 2000cc-1(a), this is hardly an unambiguous indication that the recipient states will be liable for money damages. *See Williams v. Beltran*, 569 F. Supp. 2d 1057, 1062-63 (C.D. Cal. 2008) (comparing Title IX, which explicitly contemplates remedies at law, with RLUIPA, whose "appropriate relief" statement is vague). Because there must be a clear statement requiring states to waive immunity from liability for money damages and waiver of immunity will not be implied, the Court finds that RLUIPA does not require recipients of federal funds to consent to money-damages suits.

The magistrate judge whose decision was reviewed in *Beltran* suggested that reading RLUIPA to require federal grant recipients to

ORDER - 17

waive immunity only for injunctive relief would render *Ex Parte Young* superfluous.  *See* 569 F. Supp. 2d at 1063.  As the court noted in *Beltran*, however, the remedies under RLUIPA go further than the relief allowed under *Ex Parte Young*.  RLUIPA imposes heightened scrutiny on government burdens of religious exercise, and allows relief against state governments.  *Id.* at 1063 n.5.  Accordingly, the Court finds that RLUIPA requires state recipients of federal funds to waive immunity only as to suits for injunctive relief.  Plaintiff has no claim for damages against Defendants under RLUIPA.

**E.    First Amendment Claims**

Plaintiff's claims for damages under the First Amendment through § 1983 do not face the same problems as his RLUIPA claims.  Section 1983 provides a private right of action against defendants in their individual capacity, and therefore these claims are not barred by sovereign immunity.[3]  The Court must decide whether Plaintiff has properly pled a cause of action under § 1983.

**1.    Free Exercise**

In order to state a claim under the Free Exercise Clause, a plaintiff must show that a defendant has burdened the exercise of his religion.  Neutral laws of general applicability that incidentally burden religious exercise do not violate the Free Exercise Clause.  *See Smith*, 494 U.S. 872.  But the government may not discriminate against

---

[3] Suits against state officials in their official capacity are barred by the Eleventh Amendment, however.  *See Quern v. Jordan*, 440 U.S. 332, 338 (1979).

ORDER – 18

religious beliefs or prohibit conduct because of its religious significance. *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors the court must balance to make this determination: 1) whether there is a valid connection between the regulation and the legitimate government interest to justify it; 2) what alternative means of exercising the right inmates have; 3) whether accommodating the right impacts prison officials, other inmates, and prison resources generally; and 4) whether there are available alternatives. *Id.* at 90.

Here, Plaintiff claims that Defendants attempted to squelch Druid religious practices and failed to accommodate that faith reasonably. Under no circumstances is a pattern of conduct designed to eliminate a certain religious practice at the institution constitutionally valid. As to the alleged failure to accommodate Plaintiff's religious practices, Defendants have not addressed any of the factors to be considered under the *Turner* balancing test. At this stage, it is impossible to determine what interest justifies Defendants' alleged failure, existing and potential alternatives for Pagan religious exercise, and the impact of the accommodations Plaintiff requested on prison officials and other inmates. Therefore, Defendants' motion as it relates to this claim is denied.

**2.  Retaliation**

Plaintiff also claims that Defendants retaliated against him for First Amendment-protected conduct. According to Plaintiff, Defendants subjected him to disciplinary proceedings and ultimately transferred him in response to his Druid practices and his attempts to force prison officials to accommodate those practices.

A claim for retaliation by prison officials for conduct protected by the First Amendment has five elements: 1) adverse action 2) prompted by 3) protected conduct 4) that chilled the exercise of rights and 5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Defendants do not dispute that Plaintiff alleged their actions were adverse or the conduct for which they retaliated was protected by the First Amendment. Defendants argue that Plaintiff has not pled the other three elements adequately.

### a. Causation

The Court finds that Plaintiff has adequately pled that Defendants retaliated against him because of his protected conduct. For example, Plaintiff asserts that he believes he was strip-searched as "harassment" for writing letters to prison and government officials in which he complained of the lack of accommodations for his religion. (Ct. Rec. 1 at 4-5.) Additionally, he alleges that Defendants Kudlata and V. Bueno conspired to place him in Administrative Segregation and ultimately to transfer him to requite his complaints about their previous adverse actions against him. *Id.* at 6-7.

### b. Chill

ORDER - 20

Defendants allege that Plaintiff has not pled that his religious practice or his ability to file grievances was affected by Defendants' adverse actions. However, as long as a plaintiff alleges adverse action, chilling effect necessarily follows. *See Rhodes*, 408 F.3d at 568 n.11 (". . . harm that is more than minimal will almost always have a chilling effect"). Here, Plaintiff's sufficiently alleged that Defendants chilled his religious exercise.

### c. Legitimate Correctional Goal

Although Defendants are correct that the adverse actions against Plaintiff, such as cell searches, body searches, administrative segregation, and disciplinary proceedings, theoretically serve the legitimate correctional objectives of maintaining order and security in prison, this misses the point. Plaintiff alleges that the actions taken against him were motivated solely by Defendants' desire to inhibit his religious worship. Suppression of religious exercise is not a legitimate penological goal. Accordingly, at this stage, Plaintiff has pled sufficient facts to maintain a claim for retaliation based on the First Amendment.

### F. Equal Protection Claims

Because the Equal Protection claims arise under § 1983, they too do not face the same barriers as the RLUIPA claims. The Court concludes that the Equal Protection claims against Defendants as to whom there are adequate allegations in the complaint should not be dismissed.

In order to maintain a claim for Equal Protection violations, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). If the class

is defined along suspect lines, the government's disparate treatment must survive strict scrutiny; if it is defined along quasi-suspect lines, the disparate treatment must be justified by intermediate scrutiny; and if it is defined along any other basis, the disparate treatment must have a rational basis. *See U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174 (1980); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973).

"The Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). The *Turner* test described above applies also to Equal Protection claims arising out of prison. *Shakur*, 514 F.3d at 891.

Plaintiff pled that he and other Pagans were denied opportunities to practice their religion that were available to mainstream religions. He pled that Defendants engaged in a pattern of discrimination against Pagan practitioners. As with Plaintiff's First Amendment claims, there is no justification for intentional discrimination against Pagans, and Defendants have claimed none. As a matter of law, it is unclear at this stage that Plaintiff can state no set of facts that would entitle him to relief for Equal Protection violations.

According to Defendants, Defendant Long's comment to Plaintiff that he wanted to lock up all the Pagans was a mere insult, and so could not constitute a § 1983 violation. They cite *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), for this proposition. That case is

distinguishable because it involved a prison official who insulted an inmate with a vulgarity. *Id.* Here, Plaintiff alleges that Defendant Long's comment was part of a concerted effort to repress his Druid religious practices. That is sufficient to state a § 1983 claim.

**G. Qualified Immunity**

Defendants claim that they are entitled to qualified immunity and so Plaintiffs' constitutional claims should be dismissed. Qualified immunity is a fact-specific affirmative defense that a defendant must raise. It is inappropriate to dismiss a claim on this basis unless it is clear from the face of the complaint that qualified immunity applies. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (citing *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998)). Because the Complaint does not clearly show that Defendants are entitled to qualified immunity, the Court will not entertain that defense now, but Defendants may renew it on any motion for summary judgment.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss **(Ct. Rec. 33)** is **GRANTED AND DENIED IN PART** as follows:

a. Plaintiff's claims for injunctive relief based on conditions specific to MCSP are **DISMISSED without prejudice.**

b. Plaintiff's RLUIPA claims for money damages are **DISMISSED with prejudice.**

c. Plaintiff's non-RLUIPA claims against Defendants Cate, Muhammed, Martinez, Texeira, Knipp, and Vanni are **DISMISSED without prejudice.**

ORDER – 23

d.    Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's remaining claims against other Defendants.

    2.    Defendants' Motion to Strike **(Ct. Rec. 34)** is **GRANTED.**

    3.    Plaintiff shall file an Amended Complaint consistent with this Order by March 5, 2010.

    **IT IS SO ORDERED.**    The District Court Executive is directed to enter this Order and forward a copy of this Order to Plaintiff and the **California Department of Corrections, Office of Legal Affairs, P.O. Box 942883, Sacramento, CA 94283-0001,** to forward to the appropriate agency having custody of Plaintiff.

    **DATED** this    1st    day of February 2010.


                    s/Edward F. Shea
                    EDWARD F. SHEA
                United States District Judge

Q:\Civil\Other Cts\CA-ED\ED.CA.08.2454.dismiss.wpd

ORDER - 24