UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

PAUL ANTHONY RUPE,

                    Plaintiff,

          v.

JEFFREY BEARD, in his official
capacity as Secretary of the
California Department of
Corrections and Rehabilitation,
et al.,

                    Defendants.

No.  CV-08-2454-EFS (PC)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS**

## I.  <u>INTRODUCTION</u>

Before the Court, without oral argument, is Defendants Martinez,
Jackson, and Williams's (collectively, the "Martinez Defendants")
Motion to Dismiss, ECF No. 128.  The Martinez Defendants seek
dismissal of Plaintiff's claims against them on several grounds,
including qualified immunity, failure to comply with the statute of
limitations, and failure state a claim upon which relief can be
granted.  Also pending before the Court is Defendants Cash, Fortson,
Sebok, Omeira, Bowen, Bradford, Beuchter, and Rushing's (collectively,
the "Cash Defendants") Motion to Dismiss, ECF No. 151.  The Cash

Defendants seek dismissal of Plaintiff's claims against them based on Plaintiff's failure to administratively exhaust those claims prior to asserting them in this lawsuit.   Plaintiff opposes both motions.   ECF Nos. 132 & 153.   Having reviewed the submissions of the parties and the record in this matter, and having consulted the applicable authority, the Court is fully informed.   For the reasons set forth below, the Court **grants in part and denies in part** each motion.

## II.   BACKGROUND

**A.   Factual History[1]**

Plaintiff, an incarcerated inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), is a practicing Druid.   Second Am. Compl., ECF No. 101, ¶ 4.   Druidry is a neo-pagan religion that revives the beliefs and practices of the druids — the religious and educational leaders in ancient Gaul.   Plaintiff has communicated with the Order of Bards, Ovates, and Druids ("OBOD"), a Druid organization based in England, from which he obtained correspondence courses to aid his spiritual development.   *Id.* ¶¶ 50-51.   He has completed several OBOD educational courses related to Druidry, and he has written articles and attained various titles and honorifics within his chosen religious order.   *Id.*   Druidry is Plaintiff's sincerely held religious belief.   *Id.*

---

[1]   In summarizing this case's factual history and deciding these motions to dismiss, the Court construes the pleadings in the light most favorable to the Plaintiff and accepts as true all material, well-pled factual allegations in the Second Amended Complaint, ECF No. 101, and all reasonable inferences drawn therefrom.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

Plaintiff voluntarily associated with members of other Pagan denominations while incarcerated at Mule Creek State Prison ("MCSP"). *Id.* ¶ 50.   After prison officials began harassing other Pagans, Plaintiff became concerned that he too would be victimized.  *Id.* ¶¶ 54-55.  On March 17, 2007, he wrote to California State Senator Gloria Romero, requesting various items necessary for Pagan religious worship.  *Id.* ¶ 55.  A copy of the letter was given to Defendant Subia, the MCSP warden.  *Id.*  On the same day, Plaintiff filed an administrative grievance with MCSP officials in which he requested accommodations for Pagan worship.  *Id.*  MCSP officials held a hearing on Plaintiff's grievance on April 2, 2007.  *Id.* ¶ 56.  At the hearing, Defendant Long — an associate MCSP warden — informed Plaintiff that MCSP would approve the Pagan group's practices and would grant them a worship area.  *Id.*  When Plaintiff complained that the proposed area was too small to accommodate all the Pagan worshipers, Long told Plaintiff to reduce the number of Pagan practitioners.  *Id.*  Plaintiff sent another letter to several state senators in which he described how the MCSP failed to accommodate Pagan worship.  *Id.* ¶ 57.  Certain unspecified MCSP employees allegedly intercepted this letter.  *Id.*

Following his efforts to seek redress for his grievances, Plaintiff alleges he began to experience retaliatory acts by prison officials.  Plaintiff states that various corrections officers at MCSP repeatedly strip-searched him, ransacked his cell indiscriminately, and stole or destroyed his personal and religious property.  *Id.* ¶¶ 58-59.  Plaintiff states he was placed in administrative segregation for complaining about the adverse actions he suffered.  *Id.* ¶ 62.

1  Additionally, Plaintiff asserts he was penalized with lengthy yard and
2  phone restrictions, without being told what violation he committed.
3  *Id.* ¶ 66.  Defendant Kudlata allegedly told Plaintiff he would like to
4  "lock all Pagan[s] up."  *Id.* ¶ 67.  Defendants B. Bueno and Green
5  purportedly ordered all non-Wiccans off the Pagan worship area,
6  effectively barring Druids from practicing their faith.  *Id.* ¶ 70.
7  Plaintiff states he filed multiple grievances related to the
8  restrictions on his religious practice, all of which were denied
9  during his administrative appeals.  *Id.* ¶ 72.  Absent any further
10 avenues for seeking redress, Plaintiff filed the instant suit on
11 October 16, 2008.  *Id.*

12     On March 17, 2009, Plaintiff was informed that MCSP personnel
13 had been served with his complaint.  *Id.* ¶ 76.  Plaintiff alleges that
14 retaliatory and discriminatory behavior continued, with Defendant
15 Martel refusing to provide food for any non-Judeo-Christian religious
16 celebrations.  *Id.* ¶ 77.  On May 6, 2009, Plaintiff was advised that
17 he was being considered for a transfer to the California State Prison
18 in Lancaster ("LAC").  *Id.* ¶ 80.  Although Plaintiff objected to the
19 transfer on numerous procedural and substantive grounds, he alleges
20 Defendants ignored his objections.  *Id.*  On June 17, 2009, Plaintiff
21 was transferred to LAC; Plaintiff alleges this transfer resulted from
22 a conspiracy by certain Defendants to retaliate against him for filing
23 his lawsuit.  *Id.* ¶¶ 82-83.

24     Plaintiff alleges that he continues to be subject to religious
25 discrimination at LAC.  He alleges that Defendant Bowen ordered
26 confiscation of certain of Plaintiff's religious items upon his

transfer, refusing to store the items and stating that LAC didn't "recognize Pagan religion." *Id.* ¶ 84.   Plaintiff asserts that his prisoner classification at LAC was intentionally delayed for thirty-five days, during which time he was only permitted to leave his cell on one occasion for forty-five minutes of outdoor exercise.  *Id.* ¶ 85. Plaintiff also alleges he was subject to cruel and unusual punishment in the form of excessive in-cell incarceration, with minimal time provided for outdoor exercise.  *Id.* ¶ 89.   Plaintiff contends that strict outdoor-activity restrictions, including a limit of two-to-four hours of outdoor exercise per week, are the means by which Defendants Jackson and Williams — the current LAC warden and facility captain, respectively — impermissibly operate Plaintiff's unit ("Facility C") at LAC as a "punishment unit."  *Id.* ¶ 90.

Since his transfer to LAC, Plaintiff asserts he has been denied 1) access to certain religious educational materials, *id.* ¶ 91; 2) use of state funds to purchase congregate ceremonial religious items, *id.* ¶ 92; 3) outside areas in which to engage in religious activities, *id.* ¶ 93; 4) sufficient space in which to congregate with other practitioners, *id.* ¶ 94; 5) ritual feasts, *id.* ¶ 95; 6) a paid chaplain, *id.* ¶ 96; 7) the ability to communicate with other practitioners in other buildings, *id.* ¶ 97; and 8) non-alcoholic wine and various other objects, including herbs, oils, incense, and candles, *id.* ¶ 98.  Plaintiff alleges that other religious groups are routinely provided these items, and that by denying him these items, LAC staff have engaged in discriminatory religious practices.

//

**B.    Procedural History**

Plaintiff filed his initial Complaint on October 16, 2008, ECF No. 1, and the Amended Complaint on July 24, 2009, ECF No. 31.   On February 1, 2010, the Court granted in part and denied in part Defendants' motion to dismiss.   ECF No. 48.   On February 24, 2010, Mr. Rupe filed another amended complaint, captioned as the First Amended Complaint ("FAC"), ECF No. 51.[2]   Defendants answered the FAC on June 15, 2010.   ECF No. 68.   On October 13, 2011, the Court denied Mr. Rupe's motion for summary judgment, motion for leave to conduct third-party discovery, and motion to compel discovery.   ECF No. 96.

On December 14, 2011, Mr. Rupe filed the now-operative complaint, captioned as the Second Amended Complaint ("SAC"), ECF No. 101.   Defendants answered the SAC on February 16, 2012.   ECF No. 105. The SAC asserts nine claims and names thirty-eight individual Defendants, whom the Court groups together as follows:

1)    Defendant Jeffrey Beard,[3] the Secretary of CDCR, in his official capacity;

---

[2]   The pleading captioned "First Amended Complaint" is actually Plaintiff's second amended complaint, and his subsequent (and now operative) pleading, which is captioned as his "Second Amended Complaint," is actually his third amended complaint.   To avoid confusion and to be consistent with each filing's caption, the Court refers to these complaints as the First Amended Complaint and Second Amended Complaint, respectively.

[3]   The SAC actually names Michael Cate, the former Secretary of CDCR, as a Defendant.   SAC ¶ 5.   On March 6, 2013, pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted the current CDCR Secretary, Dr. Jeffrey Beard, for Secretary Cate.   ECF No. 149.

2) Defendant R.J. Subia, the former MCSP warden, in his individual capacity; and Defendant M. Martel, the current MCSP warden, in both his individual and official capacities (the "MCSP Warden Defendants");

3) Defendants D. Long, W. Knipp, P. Vanni, G. Machado, R.M. Kudlata, A. Chamberlain, V. Bueno, B. Bueno, A. Green, K. Rutherford, J. Texeira, L. Martinez, D. Baptista, S. Barham, S. Muhammed, Kuric, Takehari, Lockhart, J. Burkard, H. Lackner, B. Rathjen, M. Bennett, L.B. Reaves, and M. Allen, all of whom are employed as corrections officers or supervisors at MCSP, in their individual capacities (the "MCSP Employee Defendants");

4) Defendant R. Nakanoto, a CDCR classification services representative ("CSR"), in his individual capacity;

5) Defendant B.M. Cash, the former LAC warden, in both his individual and official capacities; and Defendant L. Jackson, the current LAC warden, in his official capacity ("the LAC Warden Defendants"); and

6) Defendants C. Fortson, D.J. Williams, J. Sebok, A. Omeira, Bowen, K. Bradford, M. Beuchter, and L. Rushing, all of whom are employed as corrections officers or supervisors at LAC, in their individual capacities (the "LAC Employee Defendants").

On January 26, 2012, the Court screened the SAC pursuant to 28 U.S.C. § 1915A.  ECF No. 103.  After partially dismissing several of

Plaintiff's claims for mootness, the Court directed service of the following remaining claims:

    1)    the First, Second, and Third Claims for injunctive relief against Defendants Beard and Jackson,[4] based on their refusal to allow Plaintiff to practice his religious faith in violation of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*;

    2)    the Fourth Claim for money damages against certain MCSP and LAC Employee Defendants, based on suppression of Plaintiff's religious practices in violation of the First and Fourteenth Amendments and 42 U.S.C. § 1983;

    3)    the Fifth Claim for money damages against Defendant Nakanoto and certain MCSP and LAC Employee Defendants, based on attempts to chill Plaintiff's right to free speech in violation of the First and Fourteenth Amendments and § 1983;

    4)    the Sixth Claim for money damages against certain MCSP Employee Defendants, based on denial of Plaintiff's right to due process in violation of the Fourteenth Amendment and § 1983;

    5)    the Seventh Claim for money damages against certain MCSP Employee Defendants, based on unlawful search and seizure and retaliation against Plaintiff for exercise of his free-

---

[4] These same claims against Defendant Martel were previously dismissed by the Court when the Court screened the SAC. *See* ECF No. 103, at 3.

speech rights in violation of the First and Fourth Amendments and § 1983;

6)   the Eighth Claim for:

   a)   injunctive relief and money damages against the LAC Warden Defendants and Defendants Cash, Forton, and Sebok, based on infliction of cruel and unusual punishment in the form of ongoing denial of adequate outdoor exercise;

   b)   money damages[5] against Defendant Nakanoto and certain MCSP Employee Defendants, for transferring Plaintiff to LAC knowing that he would be subject to such cruel and unusual punishment; and

   c)   injunctive relief and money damages against Defendants Bradford, Beuchter, and Rushing, based on infliction of cruel and unusual punishment in the form of failing to timely classify and assign work to Plaintiff upon his arrival at LAC, all in violation of the Eighth Amendment and § 1983; and

7)   the Ninth Claim for money damages against the MCSP Warden Defendants and Defendants Long and Knipp, based on their knowledge of and deliberate indifference to violations of Plaintiff's civil rights in violation of the First and Fourteenth Amendments and § 1983.

---

[5]   The injunctive relief aspect of this sub-claim was previously dismissed by the Court when the Court screened the SAC. *See* ECF No. 103, at 3.

In addition to the injunctive relief and monetary damages above, Plaintiff also seeks an order transferring him from LAC to MCSP, dismissal of allegedly falsified disciplinary allegations, and creation of an outdoor exercise program at LAC.  SAC at 33.

On August 15, 2012, the Martinez Defendants moved to dismiss certain claims Plaintiff asserted against them.  ECF No. 128.  On March 25, 2013, the Cash Defendants moved to dismiss various other claims.  ECF No. 151.  The Court addresses each dismissal motion separately below.

### III.  **THE MARTINEZ DEFENDANTS' MOTION TO DISMISS**

Complicating matters somewhat, the relief sought by the Martinez Defendants has changed since their initial memorandum in support of the motion was filed.  Due in large part to their belated realization that Plaintiff has sued Defendants Jackson and Williams in their official capacities only, *see* SAC ¶¶ 34 & 36, the Martinez Defendants clarify in their reply brief that they seek the following relief:

1) dismissal of the Fourth and Fifth Claims against Defendant Martinez[6] for failure to exhaust administrative remedies and failure to comply with the statute of limitations;

2) substitution of Defendant Jackson for Defendants Williams, Cash, Fortson, and Sebok, pursuant to Federal Rule of Civil Procedure 25(d), as to the injunctive-relief portion of the Eighth Claim;

---

[6] In their reply memorandum, the Martinez Defendants withdraw their failure-to-exhaust argument with respect to Defendant Jackson.  Martinez Defs.' Reply, ECF No. 138, at 5-6 n.1.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS  - 10

3) dismissal of the money-damages portion of the Eighth Claim against Defendants Jackson and Williams based on the Eleventh Amendment; and

4) dismissal of the injunctive-relief portion of the Eighth Claim against Defendants Jackson and Williams based on qualified immunity and Plaintiff's failure to state a claim.

As to Defendant Martinez, Plaintiff contends that he properly exhausted administrative remedies and filed his complaint within the statute of limitations. As to Defendants Jackson and Williams, Plaintiff apparently abandons the money-damages portion of his Eighth Claim, *see* Plf's Opp'n to Martinez Defs.' Mot., ECF No. 132, at 3; however, he argues that he has properly stated a claim against both Defendants for continuing the policies of their predecessors, and that neither Defendant is entitled to qualified immunity. After reviewing the various legal standard governing the Martinez Defendants' motion, the Court addresses these issues in turn below.

**A.   Legal Standards**

   1.   Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) precludes legal action based on prison conditions "by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust all available administrative remedies prior to filing suit, *Jones v. Bock*, 549 U.S 199, 211 (2007), regardless of the relief sought by the prisoner or offered by the administrative process, *see Booth v. Churner*, 532 U.S. 731, 740-41

1   (2001).   The exhaustion requirement applies to all inmate suits about

2   aspects of prison life.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

3        Proper exhaustion requires "using all steps that the agency

4   holds out, and doing so ***properly*** (so that the agency addresses the

5   issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)

6   (internal quotation omitted) (emphasis in original).   To begin the

7   administrative process, all inmates in CDCR facilities are required to

8   submit an appeal regarding an adverse decision, action, condition, or

9   policy within fifteen (15) working days after the event or decision

10  being appealed.   *See* Cal. Code Regs. tit. 15, §§ 3084.1(a) &

11  3084.6(c).   Once the appeal process has begun, the inmate must proceed

12  through several levels of review to properly exhaust the grievance

13  process.  *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

14       For an administrative appeal to properly exhaust a subsequent

15  legal claim, the appeal must "provide enough information . . . to

16  allow prison officials to take appropriate responsive measures."

17  *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (internal

18  quotation omitted).   "The primary purpose of a grievance is to alert

19  the prison to a problem and facilitate its resolution, not to lay

20  groundwork for litigation."  *Id.* at 1120.   The inmate is not required

21  to identify the parties who may ultimately be sued.  *Sapp v. Kimbrell*,

22  623 F.3d 813, 824 (9th Cir. 2010).   Nor must the inmate state all

23  legal theories and facts necessary to prove a subsequent legal claim.

24  *Griffin*, 557 F.3d at 1120.   "A grievance suffices to exhaust a claim

25  if it puts the prison on adequate notice of the problem for which the

26  prisoner seeks redress."  *Sapp*, 623 F.3d at 824.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 12

1    If an inmate fails to exhaust his claims before asserting them

2    in a lawsuit, the court must dismiss those claims without prejudice.

3    *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).   A party

4    seeking dismissal based on an inmate's failure to exhaust may do so by

5    way of an unenumerated Rule 12(b) motion to dismiss.   *Id.* at 1119.

6    The party seeking dismissal bears the burden of proving that the

7    inmate failed to exhaust administrative remedies.   *Id.*

8         2.   Statute of Limitations

9         Section 1983 does not contain a statute of limitations

10   provision; accordingly, federal courts apply the limitations period

11   governing analogous causes of action under state law.   *Bd. of Regents*

12   *v. Tomanio*, 446 U.S. 478, 483-84 (1980).   State law governs not only

13   the length of the limitations period, but also issues of tolling.

14   *Wilson v. Garcia*, 471 U.S. 261, 269 (1985).   For § 1983 actions, the

15   statute of limitations is the state's general or residual statute of

16   limitations for personal injury actions.   *Id.* at 280.

17        Under California law, the statute of limitations for personal

18   injury claims is two years from the date the claim accrues.   Cal. Civ.

19   Proc. Code § 335.1.   If an inmate is serving non-life sentence at the

20   time of accrual, and if the claim seeks money damages pursuant to

21   § 1983, the limitations period is tolled for two additional years.

22   Cal. Civ. Proc. Code § 352.1(a); *see also Fink v. Shedler*, 192 F.3d

23   911, 914 n.6 (9th Cir. 1999).

24        Federal law governs issues related to accrual of the claim.

25   *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994).   A

26   claim accrues when the plaintiff knows, or should know, of the injury,

which forms the basis of the cause of action.  *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  More specifically, accrual occurs when a plaintiff suspects, or should suspect, that his injury was caused by wrongdoing.  *Braxton-Secret v. A. Robins Co.*, 769 F.2d 528, 530 (9th Cir. 1985).  Once a person has notice or information sufficient to put a reasonable person on inquiry, the limitations period begins to run.  *Id.*

### 3.   Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it must be resolved at the "earliest possible stage in litigation." *Id.* at 231-32.

### 4.   Failure to State a Claim

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, courts consider only the complaint and must accept as true the well-pled allegations contained in the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may consider evidence that the complaint relies

1   on, where the complaint refers to a document that is central to the

2   complaint and no party questions its authenticity.  *Id.; see United*

3   *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  In considering

4   the complaint's allegations, the Court must "construe the pleading in

5   a light most favorable to the [non-moving party], and resolve all

6   doubts in the pleader's favor."  *Hebbe v. Pliler*, 627 F.3d 338, 340

7   (9th Cir. 2010).  Pleadings filed by *pro se* inmates are held to less

8   stringent standards than those drafted by attorneys.  *Id.* at 342.

9       A complaint may be dismissed when it lacks either "a cognizable

10  legal theory" or "sufficient facts alleged under a cognizable legal

11  theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

12  2011).  The Court need not accept legal conclusions as true, and the

13  factual allegations must collectively state a plausible claim for

14  relief.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011).

15  A plaintiff need not plead "detailed factual allegations", but he must

16  provide "more than an unadorned, the-defendant-unlawfully-harmed-me

17  accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

18  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint merits

19  dismissal "if it tenders naked assertion[s] devoid of further factual

20  enhancement."  *Id.* (internal quotations omitted).

21  **B.   Discussion**

22      The Court first addresses Defendants' arguments with respect to

23  dismissal of the Fourth and Fifth Claims against Defendant Martinez.

24  The Court then addresses Defendants' arguments regarding the

25  substitution of parties and dismissal of the Eighth Claim against

26  Defendants Jackson and Williams.

1.   <u>Dismissal of Claims Against Defendant Martinez</u>

In his Fourth and Fifth Claims, Plaintiff seeks damages for unlawful restraint on his religious beliefs and unlawful retaliation for seeking redress for his grievances.   Plaintiff alleges that Defendant Martinez and others "used their positions in [internal prison committee] hearings to silence Plaintiff's [constitutional rights] by placing him up for transfer." *Id.* ¶ 111 (Fourth Claim, concerning his religious practice); *see also* SAC ¶ 117 (Fifth Claim) (concerning his exercise of free speech).   In the factual portion of the Complaint, Plaintiff also alleges that during this same time, Defendant Martinez conspired with other "to have legally unavailable additional punishments imposed based on Plaintiff's legally authorized challenges to retaliations and religious practice." *Id.* ¶ 66.

The Martinez Defendants seek dismissal of these claims on the grounds that 1) Plaintiff failed to exhaust administrative remedies; and 2) Plaintiff failed to file his claims within the statute of limitations period.   The Court discusses these arguments in turn.

a.   <u>*Administrative Exhaustion*</u>

As a preliminary matter, the parties appear to dispute the scope of Plaintiff's claims against Defendant Martinez.   In his complaint, Plaintiff cites to certain conversations between himself and Defendant Martinez in 2001 — namely that Defendant Martinez claimed Plaintiff "had a state employee enemy," which warranted his transfer, but that after he requested an investigation, she rescinded the transfer and claimed that the employee "had moved on."   The Martinez Defendants contend that Plaintiff bases his claims against Defendant Martinez on

these conversations, and that no administrative grievances regarding the conversations were ever filed. But, on the contrary, it does not appear that Plaintiff *is* basing his claims against Defendant Martinez on these 2001 conversations. In fact, in his opposition to the instant motion, Plaintiff specifically indicates he does not assert claims against Defendant Martinez based on these 2001 conversations. *See* Plf's Opp'n to Martinez Defs.' Mot., ECF No. 132, at 2 ("Martinez is only sued for her action on October 16, 2007.").

As to the alleged wrongful conduct on October 16, 2007, the Court finds that Plaintiff fairly presented and exhausted his claims concerning Defendant Martinez. Plaintiff's November 10, 2007 grievance adequately appraised prison officials of his belief that MCSP employees unlawfully used disciplinary methods and punitive transfers to harass Pagan practitioners and retaliate against them for grievances. *See, e.g.*, Ex. 21 to Defs' Mot., ECF No. 128-9, at 42-57. In fact, Plaintiff's grievance contains two full, single-spaced, typed pages of detailed factual recitations setting forth his belief about the alleged conduct at issue. *Id.* at 47-48. He specifically grieved the ICC's September 26, 2007 transfer recommendation, which he believed to have resulted from an allegedly falsified disciplinary form, and he explained his concerns with the subsequent October 16, 2007 UCC meeting, in which Defendant Martinez participated:

> On 10/16/07 I went before [a UCC] which also requested my transfer based upon [Defendant] Bueno's falsified CDC form 1030. . . . On 10/16/07 I received a 90 day yard/phone restriction notice from [Defendant] Kudlata[;] it had been backdated to appear as though it was the original punishment imposed – [but] this punishment was not available at the time of my hearing. . . . [Defendant]

1    Kudlata specifically states he is finding me guilty because
2    I am the leader of a religious group.

*Id.* at 47.

      While true that Defendant Martinez is never specifically named,
a grievance need not name all possible defendants or facts as long as
"it puts the prison on adequate notice of the problem for which the
prisoner seeks redress." *Sapp*, 623 F.3d at 824. Plaintiff's
complaint plainly names Defendant Martinez in the context of her
participation in this alleged conspiracy, including her attendance and
participation in the October 16, 2007 UCC meeting. *Compare* SAC ¶ 66
(setting out facts and participants in October 16 UCC meeting), *with*
*id.* ¶ 111 (claim against ICC and UCC meeting participants based on
transfer recommendation), *and id.* ¶ 117 (same). MCSP officials were
sufficiently appraised of the nature of Plaintiff's grievance and his
concerns regarding the ICC and UCC meetings, in which Defendant
Martinez participated. And the Martinez Defendants do not dispute
that Plaintiff's appeal was properly exhausted at all necessary levels
of CDCR administrative review. Accordingly, Plaintiff has fairly
exhausted his Fourth and Fifth Claims as to Defendant Martinez.

      b.   <u>Statute of Limitations</u>

      Although the Martinez Defendants assert that Plaintiff's claims
against Defendant Martinez are barred by the statute of limitations,
the parties dispute the date on which Plaintiff's claims accrued.
Nonetheless, the Martinez Defendants assert that regardless of the
accrual date, the limitations period ran before Plaintiff brought his
claims. The Court addresses the accrual date and the running of the
limitations period separately.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 18

1                    *i.   Accrual of Plaintiff's Claims*

2        As discussed above, Plaintiff represents that Defendant Martinez

3   "is only sued for her actions on October 16, 2007."  Plf's Opp'n, ECF

4   No. 132, at 3.    Undeterred, the Martinez Defendants argue that

5   Plaintiff's reliance on these communications — which allegedly

6   demonstrates Defendant Martinez's "willingness to lie," Plf's Opp'n to

7   Martinez Defs.' Mot., ECF No. 132, at 4 — shows that Plaintiff was

8   aware of Defendant Martinez's allegedly wrongful conduct in 2001, and

9   that his action would have accrued at that time.  But this argument is

10  flawed.  There is no indication that Plaintiff was aware *in 2001* that

11  Defendant Martinez was allegedly lying to him or impermissibly

12  discriminating against him.  Plaintiff cites no other instances of

13  alleged wrongful conduct between 2001 and 2006.  Plaintiff's complaint

14  does not give rise to a presumption that he knew, or should have

15  known, that he was being subject to unlawful discrimination and

16  retaliation during that time.  Moreover, given that Defendant Martinez

17  eventually told Plaintiff that his transfer had been rescinded because

18  his state employee "enemy" had "moved on," SAC ¶ 48, it is unclear

19  what claim Plaintiff could have asserted in 2001, such that — four

20  years later — the claim would have been barred by the statute of

21  limitations: Plaintiff had not yet suffered any cognizable harm.

22        Construing Plaintiff's Complaint in a light most favorable to

23  him — as the Court must for purposes of this motion — the Complaint

24  indicates that Plaintiff was not aware of Defendant Martinez's alleged

25  discriminatory motive in 2001, and that he did not become aware of it

26  until the UCC committee disciplined him and sought to transfer him in

1   October 2007.   At that point, according to Plaintiff, he *then* became

2   aware of the significance of his 2001 interactions with Defendant

3   Martinez.   Accordingly, the earliest date by which Plaintiff's claims

4   against Defendant Martinez could have accrued was October 16, 2007.

5                    *ii.  Limitations Period*

6           Regardless of the accrual date, the Martinez Defendants argue

7   that Plaintiff's claims against Defendant Martinez are untimely.

8   Because Plaintiff's claim accrued on October 16, 2007, the statute of

9   limitations period expired on either October 16, 2009, or October 16,

10  2011, depending on whether Plaintiff was eligible for the two-year

11  tolling period discussed above.[7]   The Martinez Defendants assert that

12  Plaintiff's claims against Defendant Martinez in the SAC, filed

13  December 14, 2011, fall outside the limitations period.   However, the

14  Martinez Defendants appear to have overlooked the previous iterations

15  of the complaint Plaintiff has filed in this action.   Plaintiff filed

16  his initial complaint on October 16, 2008 — exactly one year after the

17  UCC committee meeting on October 16, 2007, the date his claim accrued.

18  ECF No. 1.   In that initial complaint, he identified Defendant

19  Martinez as a party to the suit.   *Id*. at 4.   He specifically alleged

20  that she conspired with others "to put plaintiff up for a retaliatory

21  transfer via [internal prison committee] hearings designed to suppress

22  plain[t]iff's free speech and religious practice[.]"   *Id.* at 20.   This

23  _____

24  [7]  The pleadings do not indicate whether Plaintiff is serving a non-life

25      sentence and would therefore be eligible for the two-year tolling.   In

26      any event, this distinction is immaterial because, as discussed below,
        Plaintiff's claims were filed within two years of accrual.

allegation is substantively identical to the allegations against Defendant Martinez Plaintiff asserts by way of the Fourth and Fifth Claims in the SAC. *Compare id.*, *with* SAC ¶ 111 (Fourth Claim), *and* SAC ¶ 117 (Fifth Claim).

In seeking dismissal based on the statute of limitations, the Martinez Defendants appear to have ignored the contents of the original complaint and, for that matter, the fact that this lawsuit was filed in 2008. *See, e.g.*, Mot. at 11 ("Plaintiff knew about the [prison committee] meeting in 2007, yet he didn't file suit under [sic] December 2011."). Accordingly, because Plaintiff named Defendant Martinez and stated his claims against her when he filed the original complaint on October 16, 2008, his claims against Defendant Martinez are not barred by the statute of limitations.

    2.   <u>Substitution of Parties and Dismissal of Eighth Claim Against Defendants Jackson and Williams</u>

In his Eighth Claim, Plaintiff asserts that Defendants Cash, Fortson, and Sebok unlawfully punished him in violation of the Eighth Amendment, and that Defendants Jackson and Williams — who replaced Defendants Cash and Fortson, respectively — continued the unlawful policies of their predecessors.[8] Plaintiff alleges these Defendants used "imaginary threats to security and [an] inadequate exercise yard

---

[8]  As discussed above, there are actually three separate sub-claims within Plaintiff's Eighth Claim. The Martinez Defendants' motion only pertains to the first sub-claim, which Plaintiff asserts against Defendants Jackson, Williams, Cash, Fortson, and Sebok. Defendants Cash, Fortson, and Sebok have filed a separate motion to dismiss, discussed below, that also pertains to the first sub-claim of Plaintiff's Eighth Claim.

1   schedule [so] as to deprive Plaintiff of the basi[c] human need of

2   exercise[.]"   SAC ¶ 128.   Plaintiff seeks both injunctive relief and

3   damages.   *Id.* at 32 (prefatory text to ¶¶ 127-130).

4        As to Plaintiff's Eighth Claim, the Martinez Defendants seek to

5   substitute Defendant Jackson with respect to the injunctive-relief

6   aspects of Plaintiff's claim; they also seek to dismiss the claim on

7   the basis that the claim is barred in part by the Eleventh Amendment

8   and the doctrine of qualified immunity, and that Plaintiff has failed

9   to state a valid claim.   The Court discusses these issues below.

10                      a.   *Substitution of Parties*

11        The Martinez Defendants ask the Court to substitute Defendant

12   Jackson for Defendants Williams, Sebok, Fortson and Cash as to the

13   injunctive-relief aspects of the Eighth Claim.[9]   They contend that

14   this substitution is appropriate under Rule 25(d) because Defendant

15   Jackson, who is sued in his official capacity, has replaced Defendant

16   Cash as the current warden of LAC.   *Id.* ¶ 33-34.

17        Rule 25(d) allows the court to "order substitution at any time"

18   when "a public officer who is a party in an official capacity dies,

19   resigns, or otherwise ceases to hold office while the action is

20   pending."   Fed. R. Civ. P. 25(d).   Defendant Cash is sued, at least in

21   part, in his official capacity, thus, substitution of Defendant Cash

22   in his official capacity is warranted.   Moreover, because Defendants

23   Cash and Fortson are no longer employed at LAC, *see* SAC ¶¶ 34 & 36,

24   injunctive relief against these Defendants in their individual

25   ────────────────

26   [9]   The Martinez Defendants' motion does not seek substitution with regard
        to the money-damages portion of the Eighth Claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS   - 22

1  capacities is now moot.   The Court therefore finds substitution of

2  Defendant Jackson for Defendants Cash and Fortson is appropriate,

3  pursuant to Rule 25(d), as to the injunctive-relief portion of

4  Plaintiff's Eighth Claim.

5      Neither party has indicated whether Defendants Williams and

6  Sebok are still employed at LAC.   But assuming they are, Rule 25(d)

7  provides no basis for substitution of a party sued in his official

8  capacity who continues to hold office (Defendant Williams) or for a

9  party sued only in his individual capacity (Defendant Sebok).

10  Accordingly, the Court declines to substitute Defendant Jackson for

11  Defendants Williams and Sebok.

12          b.   _Eleventh Amendment_

13      The Martinez Defendants contend that the monetary-damages

14  portion of Plaintiff's Eighth Claim against Defendants Jackson and

15  Williams is barred by the Eleventh Amendment.   The Eleventh Amendment

16  precludes claims under § 1983 against state officials acting in their

17  official capacities, because such officials are not "persons" for

18  purposes of § 1983.   _Arizonas for Official English v. Arizona_, 520

19  U.S. 43, 69 n.24 (1997) ("State officers in their official capacities,

20  like States themselves, are not amenable to suit for damages under §

21  1983."); _Flint v. Dennison_, 488 F.3d 816, 824-25 (9th Cir. 2007).   The

22  Eleventh Amendment jurisdictional bar on official-capacity suits

23  applies to suits for monetary damages.[10]   _See, e.g._, _Flint_, 488 F.3d

24  _____

25  [10] Despite the Eleventh Amendment's bar on money-damages suits, it does not
26      bar an injunctive relief § 1983 claim against an official-capacity state
        officer for violations of a plaintiff's constitutional rights.   _See_

at 825.   Thus, to the extent the Eighth Claim seeks monetary damages against Defendants Jackson and Williams in their official capacities, the claim is barred by the Eleventh Amendment and must be dismissed.

        *c.*   *Qualified Immunity*

    The Martinez Defendants also seek dismissal of the injunctive-relief portion of the Eighth Claim against Defendants Jackson and Williams on the ground that they are entitled to qualified immunity. But Defendants Jackson and Williams are sued only in their official capacities.  *See* SAC ¶ 34 (naming Defendant Jackson in his official capacity);  *id.* ¶ 36 (same for Defendant Williams);  *id.* ¶ 128 (explicitly stating that the Eighth Claim is brought against Defendants Jackson and Williams "in [their] official capacity only"). State and municipal entities and their employees — when sued in their official capacities — may not assert qualified immunity to shield themselves from claims.[11]   *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("[A]n official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law . . . . [but] [i]n an official-capacity action, these defenses are

---

    *Krainski v. Nevada ex rel. Bd. of Regents of Nev.*, 616 F.3d 963, 967-68 (9th Cir. 2010) ("A narrow exception [to the Eleventh Amendment bar] exists where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights." (internal quotations omitted)).

[11] For that matter — irrespective of whether these Defendants are sued in their individual or official capacities — qualified immunity does not shield a public official from injunctive-relief claims.  *See, e.g.*, *Wheaton v. Webb-Petett*, 931 F.2d 613, 620 (9th Cir. 1991).

1  unavailable." (internal citations omitted)); *Hallstrom v. City of*

2  *Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) (citing *Owen v. City*

3  *of Independence*, 445 U.S. 622, 638 (1980)). Defendants Jackson and

4  Williams may not rely on qualified immunity to shield themselves from

5  the injunctive relief sought by Plaintiff's Eighth Claim.

6          *d.*   <u>*Failure to State a Claim*</u>

7       The Martinez Defendants also seek dismissal of the Eighth Claim

8  against Defendants Jackson and Williams on the basis that it consists

9  of a vague and conclusory allegation that these Defendants continued

10 the policies of their predecessors, using "imaginary threats to

11 security and [an] inadequate exercise yard schedule," SAC ¶ 128, to

12 inflict cruel and unusual punishment on Plaintiff. Martinez Defs.'

13 Mot., ECF No. 128, at 11-12. In response, Plaintiff contends that he

14 pled this claim in sufficient detail with respect to Defendants Cash

15 and Fortson; and because Defendants Jackson and Williams — who are

16 sued in their official capacities — replaced Defendants Cash and

17 Fortson at LAC, Plaintiff argues his claim should be deemed sufficient

18 with respect to Defendants Jackson and Martinez as well.

19      In reply, the Martinez Defendants abandon their prior argument

20 and instead ask the Court to dismiss the Eighth Claim on the basis

21 that Plaintiff's alleged facts do not rise to the level of

22 unconstitutional cruel and unusual punishment. *See* Martinez Defs.'

23 Reply, ECF No. 138, at 4-5. The substance of the Martinez Defendants'

24 argument is that two-to-four hours per week of exercise is

25 constitutionally sufficient and does not constitute cruel and unusual

26 punishment. But even if true, this argument was raised for the first

1   time in the Martinez Defendants' reply memorandum; they never raised

2   it in their initial memorandum, and Plaintiff has had no opportunity

3   to address it.  The Court declines to decide the motion based on this

4   newly-raised argument.  *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir.

5   1996) (per curiam) (declining to reach issue raised for the first time

6   in the reply brief).  The Martinez Defendants are free to renew this

7   argument by way of a separate, timely-filed dispositive motion.

8   **C.   Conclusion**

9        For the foregoing reasons, the Martinez Defendants' motion to

10  dismiss is granted in part with respect to 1) substitution of

11  Defendant Jackson for Defendants Cash and Fortson as to the

12  injunctive-relief portion of the Eighth Claim, and 2) dismissal of the

13  monetary-damages portion of the Eighth Claim against Defendants

14  Jackson and Williams.  The motion is denied in part with respect to 1)

15  dismissal of Plaintiff's claims against Defendant Martinez, 2)

16  substitution of Defendant Jackson for Defendants Williams and Sebok as

17  to the injunctive-relief portion of the Eighth Claim, and 3) dismissal

18  of injunctive-relief portion of the Eighth Claim against Defendants

19  Jackson and Williams.

20              **IV.   THE CASH DEFENDANTS' MOTION TO DISMISS**

21       The Cash Defendants seek dismissal of the following claims:

22  1) the Fourth Claim, as to Defendants Bowen and Omeira; 2) the Eighth

23  Claim, as to Defendants Cash, Fortson, and Sebok; and 3) the Fifth and

24  Eighth Claims, as to Defendants Bradford, Beuchter, and Rushing.  The

25  Cash Defendants assert that Plaintiff failed to timely exhaust the

26

1   CDCR administrative appeal process for each of these claims before

2   first asserting them in the FAC on February 24, 2010.

3        Plaintiff does not dispute that he failed to exhaust these

4   claims; instead, he alleges that he was prevented from exhausting

5   these claims because LAC appeals staff repeatedly "failed to timely

6   respond or timely provide a notice of delayed response" to his various

7   appeals.  Plf's Opp'n to Cash Mot., ECF No. 153, at 1.  In essence,

8   Plaintiff asserts that the LAC appeals staff effectively deprived him

9   of administrative remedies, and that his claims should therefore be

10  deemed exhausted.

11  **A.   Legal Standards**

12       The legal standard governing a motion to dismiss for failure to

13  exhaust administrative remedies is generally discussed above.  *See*

14  part III.A.1, *supra*.  Because Plaintiff seeks to be excused from his

15  failure to exhaust on the ground that CDCR staff deprived him of

16  administrative remedies — thereby rendering those remedies effectively

17  unavailable — "[i]t is [P]laintiff's burden to show that circumstances

18  existed which rendered his administrative remedies effectively

19  unavailable." *Meador v. Wedell*, No. CIV S-10-0901-KJM-DAD P, 2012 WL

20  360199, at *7 (E.D. Cal. Feb. 2, 2012) (unpublished), *appeal*

21  *dismissed*, No. 12-15588 (9th Cir. Mar. 28, 2012).

22  **B.   Discussion**

23       Tthe Court first reviews the applicable CDCR regulations

24  governing inmate administrative appeals and staff responses thereto.

25  Next, the Court determines whether an inmate's failure to exhaust can

26  be excused based on either a) improper screening of appeals by prison

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 27

officials, or b) a failure by prison officials to timely respond to inmate appeals.   Finally, the Court analyzes each of Plaintiff's relevant appeals to determine whether Plaintiff's failure to exhaust that appeal should be excused.

    1.   <u>Governing CDCR Regulations</u>

    CDCR provides one "informal" and three "formal" levels of review for inmate appeals.   Cal. Code Regs. tit. 15 § 3084.5(a)-(d).   A decision from the third formal (or "Director's") level of review satisfies the exhaustion requirement.   *Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).   For non-medical appeals, the third-level review can occur before the CDCR Office of Appeals.   *See* Decl. of T. Kaestner ¶ 5, ECF No. 128-2, at 2.

    At each level of appeal, CDCR staff must respond to the appeal within a prescribed number of days: 1) for informal appeals, ten (10) working days; 2) for first-level appeals, thirty (30) working days; 3) for second-level appeals, twenty (20) working days[12]; and 4) for third-level appeals, sixty (60) working days.   Cal. Code Regs. tit. 15 § 3084.6(b)(1)-(4).   CDCR staff may exceed these time limits for several authorized reasons, including unavailability of staff, complexity of issues raised, or necessary involvement of external parties.   *Id.* § 3084.6(b)(5).   If CDCR cannot respond to the appeal by the deadline, they must inform the inmate in writing of the reason for delay and the estimated completion date.   *Id.* § 3084.6(b)(6).

---

[12] If the first-level appeal is waived, stay may respond to the second-level appeal within thirty (30) — instead of twenty (20) — working days. Cal. Code Regs. tit. 15 § 3084.6(b)(3).

Each CDCR facility must designate an appeals coordinator to screen appeals for compliance with CDCR regulations and, if necessary, reject non-compliant appeals. *Id.* § 3084.3(a). Appeals may be screened and rejected if, *inter alia*, "[t]he appeal is incomplete or necessary supporting documents are not attached." *Id.* § 3084.3(c)(5). If the appeal is rejected for lack of supporting documentation, the written rejection must instruct the inmate about further action the inmate must take before resubmitting the appeal. *Id.* § 3084.3(d).

2.   Exhaustion Due to "Effectively Unavailable" Remedies

While the PLRA requires inmates to exhaust administrative remedies, the inmate must exhaust "only those administrative remedies 'as are available.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997(e)(a)). Thus, an inmate's failure to exhaust may be excused if no administrative remedies are actually or effectively available. *Id; see also Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). In *Nunez*, the Ninth Circuit held that administrative remedies were unavailable and effectively exhausted when prison officials failed to abide by internal regulations governing the appeals process. 591 F.3d at 1224. The plaintiff, a federal inmate, filed an administrative grievance concerning what he believed to be an improper strip search. *Id.* at 1220. In response to his grievance, prison officials cited a written policy (or "Program Statement") authorizing the search, but inadvertently cited the wrong Program Statement, citing instead to a classified document addressing internal prison security. *Id.* at 1220-21. After a "ten-month wild goose chase," *id.* at 1226, during which the inmate repeatedly sought

copies of the wrong document from various agencies so he could challenge the policy, he was eventually informed of the error. *Id.* at 1221-22.  However, by that time, the inmate could no longer seek administrative remedies, because the deadline for appealing to the next level of review had lapsed. *Id.*  In excusing the plaintiff's failure to fully exhaust the inmate appeals process, the Ninth Circuit held that the inmate's failure was excused "because he took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake." *Id.* at 1224.

Plaintiff contends that his failure to exhaust his claims here should similarly be excused for two reasons: first, he alleges that LAC appeals staff improperly screened several of his appeals; and second, he claims that LAC appeals staff ignored or failed to timely respond to several of his appeals.  Before addressing whether Plaintiff's failure to exhaust should be excused on these grounds, the Court first examines whether improper screening of or untimely responses to inmate appeals can provide a sufficient basis for excusing an inmate's failure to exhaust.

a.   *Improper Screening of Appeals*

The Ninth Circuit recognizes an exception to the exhaustion requirement "where prison officials improperly screen an inmate's administrative appeals" and thereby deny the inmate access to the administrative appeals process. *Sapp*, 623 F.3d at 823.  As the *Sapp* court held, "improper screening of an inmate's administrative grievances     renders     administrative     remedies     'effectively

1   unavailable' [because] [i]f prison officials screen out an inmate's

2   appeals for improper reasons, the inmate cannot pursue the necessary

3   sequence of appeals . . . ."  *Id.*  To demonstrate that the improper-

4   screening exception applies,

> a prisoner must show that he attempted to exhaust his
> administrative remedies but was thwarted by improper
> screening.  In particular, the inmate must establish (1)
> that he actually filed a grievance or grievances that, if
> pursued through all levels of administrative appeals, would
> have sufficed to exhaust the claim that he seeks to pursue
> in federal court, and (2) that prison officials screened
> his grievance or grievances for reasons inconsistent with
> or unsupported by applicable regulations.

10  *Id.* at 823-24.  The burden of proof is on the inmate.  *Meador*, 2012 WL

11  360199, at *7.

12                    b.  *Untimely Responses to Appeals*

13      "The Ninth Circuit has not determined that an untimely response

14  by prison [staff] [automatically] excuse[s] for a prisoner's failure

15  to exhaust, but it has left open the possibility that unjustified

16  delay in responding to a grievance, 'particularly a time-sensitive

17  one, may demonstrate that no administrative process is in fact

18  available.'"  *Womack v. Bakewell*, No. CIV S-09-1431 GEB KJM P., 2010

19  WL 3521926, at *4 (E.D. Cal. Sept. 8, 2010) (unpublished) (quoting

20  *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005)).  Consistent

21  with "all the other circuits that have considered the question," the

22  Ninth Circuit has refused "'to interpret the PLRA so narrowly as

23  to . . . permit [prison officials] to exploit the exhaustion

24  requirement through indefinite delay in responding to grievances.'"

25  *Brown*, 422 F.3d at 943 n.18 (quoting *Lewis v. Washington*, 300 F.3d

26  829, 833 (7th Cir. 2002)) (alteration in original).  Other judges in

1   this District "have relied on [the Ninth Circuit's decision in] *Nunez*

2   and precedent from other circuits in finding that prison officials'

3   failure to process appeals within the time limits prescribed by prison

4   regulations renders an appeals process unavailable." *Womack*, 2010 WL

5   3521926, at *4 (collecting cases).   But, rather than employing a

6   bright-line approach — which would excuse an inmate's failure to

7   exhaust based on *de minimis* delays by prison officials — the reviewing

8   court instead must examine "how the process actually unfolds in a

9   particular case" to determine whether the inmate's administrative

10  remedies were effectively unavailable. *Id.* at *5.

11      The district court's analysis in *Womack* provides helpful

12  guidance.   In that case, the plaintiff received an untimely response

13  to his first-level CDCR appeal and, after failing to seek the next two

14  levels of formal review for more than two months, he opted instead to

15  file suit.   *Id.*   The *Womack* court concluded that, under the

16  circumstances, the plaintiff had not demonstrated that the CDCR

17  appeals process was effectively unavailable.   *Id.*   Although prison

18  officials did not respond to the plaintiff's first-level appeal within

19  the prescribed time limit, they corrected that failure several months

20  *before* the plaintiff filed suit, and the plaintiff did not explain why

21  he abandoned the next level of CDCR review during those intervening

22  months.   *Id.*

23      As the Cash Defendants correctly point out, an inmate's

24  exhaustion of a claim — or failure to do so — is determined at the

25  time the claim is first asserted in the action.   *See Rhodes v.*

26  *Robinson,* 621 F.3d 1002 (9th Cir. 2010) (reaffirming the rule that a

new claim must be exhausted before it is introduced federal court).

Even if the inmate subsequently exhausts *after* asserting the claim,

the tardy exhaustion cannot excuse the inmate's earlier failure to

exhaust; in fact, under these circumstances, the court must dismiss

the claim even if it was fully exhausted after suit was filed. *See,*

*e.g.*, *McKinney v. Carey,* 311 F.3d 1198, 1200 (9th Cir. 2002) (holding

that exhaustion during the pendency of the litigation will not save an

action from dismissal); *see also Vaden v. Summerhill,* 449 F.3d 1047,

1051 (9th Cir. 2006).

Because exhaustion is determined at the time the claims are

first asserted in the suit, the question of whether "effective

unavailability" excuses an inmate's failure to exhaust should also be

measured at the time the claims are first asserted. In *Womack*, the

plaintiff could readily have availed himself of further administrative

review before he filed his complaint — irrespective of prison

officials' earlier untimeliness — and that he chose not to. Likewise,

in *Ellis v. Cambra*, No. 102CV5646AWISMSP, 2005 WL 2105039 (E.D. Cal.

Aug. 30, 2005) (unpublished), the court rejected an inmate's claims

for failure to exhaust, even though the inmate never received a

response to his grievance at the informal level of appeal. *Id*. at *5.

Because the inmate was notified *before he filed suit* that he could

proceed to a first level appeal even without having exhausted an

informal appeal, the *Ellis* court reasoned that "an avenue of

administrative relief remained available," and Plaintiff had not been

foreclosed from seeking administrative relief. *Id*.

//

1    The rule, then, that can be distilled from *Womack, Ellis*, and

2    the other cases upon which they rely, is that an inmate's failure to

3    exhaust can be excused if prison officials have improperly deprived

4    the inmate of administrative remedies at the time the inmate files

5    suit.  In essence, an inmate can show that administrative remedies are

6    effectively unavailable if 1) prison officials have failed to timely

7    respond to a grievance, 2) the inmate has received no notice of or

8    justification for the delay, and 3) the inmate has no other available

9    avenues to seek administrative relief.  Under those circumstances, the

10   inmate has no redress for grievances except by way of a lawsuit, and

11   the inmate's failure to exhaust under those circumstances must be

12   excused.[13]

13   Allowing an inmate to proceed with his claims under these

14   conditions balances the need for comity with the need to ensure that

15   inmates can seek proper redress for legitimate grievances.  Prison

16   officials can control whether their responses to grievances are

17   timely.  And in the event that a delay becomes inevitable, the prison

18   appeals staff can ensure the administrative process remains available

19   by timely sending the inmate a notice of delay, which can be justified

---

21   [13] And just as post-filing exhaustion does not excuse a plaintiff's failure

22   to exhaust before bringing the claim, a subsequent untimely response by
     prison officials after suit has been filed cannot serve to "unexhaust"

23   the claim and justify dismissal.  *See Kons v. Longoria*, No. 1:07-cv-
     00918-AWI-YNP, 2009 WL 3246367, at *4 (E.D. Cal. Oct. 6, 2009)

24   (unpublished) ("The Court is unaware of any precedent that suggests that

25   Plaintiff's administrative remedies . . . are no longer exhausted after

26   prison officials delivered their late response to his [second-level]
     appeal . . . .").

for a number of broadly-stated reasons. *See* Cal. Code Regs. tit. 15 § 3084.6(5)(A)-(C).

That said, the Court is not suggesting that a minor delay in processing inmate appeals will automatically excuse an inmate's abandonment of the administrative grievance process. An inmate who files suit a mere one or two days after an appeal-response deadline has passed has probably not demonstrated that administrative remedies are effectively unavailable, as the Ninth Circuit requires. *See Nunez*, 591 F.3d at 1224. A *de minimis* delay does not sufficiently demonstrate that the inmate has no available avenue of administrative remedies. But, on the other hand, after the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals.

With this approach in mind, the Court now examines Plaintiff's claims to determine whether, as he asserts, his failure to exhaust his claims against the Cash Defendants should be excused.

3. <u>Exhaustion of Plaintiff's Claims</u>

The Cash Defendants seek dismissal of the following claims: 1) the Fourth Claim against Defendants Omeira and Bowen; 2) the First, Second, and Third Claim against Defendant Cash, and the Eighth Claim against Defendants Cash, Fortson, and Sebok; and 3) the Fifth and Eighth Claims against Defendants Bradford, Beuchter, and Rushing. As to each of these groups of Defendants, the Court analyzes whether

1    Plaintiff attempted to exhaust these claims, and whether his failure

2    to do so must be excused because CDCR officials either improperly

3    screened or failed to timely respond to his administrative appeals.

4              a.    *Defendants Omeira and Bowen*

5         The Cash Defendants seek dismissal of the Fourth Claim as to

6    Defendants Omeira and Bowen.  In his Fourth Claim, Plaintiff alleges,

7    *inter alia*, that Defendant Bowen confiscated certain religious

8    property from him, including tarot cards, and refused to return that

9    property.  SAC ¶¶ 84 & 115.  Plaintiff also contends that Defendant

10   Omeira denied him the ability to collect names for religious services,

11   an ability that is provided to other religious groups.  *Id.* ¶ 114.

12        As a threshold matter, Plaintiff concedes that he cannot

13   demonstrate he properly exhausted his claims with respect to Defendant

14   Omeira, and he admits that dismissal of Defendant Omeira is therefore

15   warranted.  Accordingly, the Court dismisses the Fourth Claim as to

16   Defendant Omeira.

17        As to Defendant Bowen, Plaintiff asserts that he tried to file

18   appeals concerning the confiscation of his property on four separate

19   occasions using the LAC appeals process, and that each time, LAC staff

20   chose not to process his appeals.  In support of this assertion,

21   Plaintiff submits copies of two separate letters he wrote to Defendant

22   Beard's predecessor, CDCR Secretary Michael Cate — dated August 23,

23   2009, and October 17, 2009 — in which Plaintiff repeats his assertion

24   that LAC staff ignored his appeals.

25        But Plaintiff has submitted no evidence to show that he ever

26   filed appeals concerning Defendant Bowen or the confiscation of his

property.   His two letters to Secretary Cate do not identify the subject matter of the appeals he allegedly filed with LAC.  His August 23, 2009 letter only states that he previously filed three separate appeals with LAC staff which were not processed, and asserts that LAC staff did not provide him with access to the facility's library.  Ex. XX to Rupe Decl., ECF No. 153, at 9.  His October 17, 2009 letter states that "[o]bviously, [LAC staff], whom [sic] are still barring all Pagan religious practices, have no intention of allowing this appeal to go forward," *id*. at 11; but again, the letter does not identify the specific grievances raised in Plaintiff's LAC appeals. Both letters state that copies of his allegedly ignored appeals were attached, but Plaintiff omits those attachments from his filing.  The Court cannot conclude from the text of these letters, as Plaintiff urges, that he actually submitted the appeals he purported to have submitted, or that the appeals pertained to his claims against Defendant Bowen.  There is simply no basis in the record to do so.

Plaintiff also submits a copy of a declaration, purportedly dated October 16, 2009, in which he asserts that LAC staff confiscated his tarot cards and other religious property.  ECF No. 153, at 12 ("the Declaration").  While the Declaration appears to address the same claims Plaintiff raises against Defendant Bowen in this suit, it does not satisfy Plaintiff's burden of proving that he attempted to exhaust his appeals concerning Defendant Bowen or the confiscation of his property, for several reasons.

First, the record is devoid of any indication that the Declaration was provided to LAC appeals staff or Secretary Cate as

part of Plaintiff's purported appeals concerning the confiscation of his property.  The Declaration is simply included as an attachment to his opposition to the instant dismissal motion, with no indication as to whom it was sent or when.  Other than the fact that Plaintiff has included it in Exhibit XX, which also contains his letters to Secretary Cate, Plaintiff has provided the Court with no indication this declaration was ever submitted to LAC in his appeals or that it was included with his letters to Secretary Cate.

Second, the Declaration suffers from credibility issues. Although the declaration is dated October 16, 2009 — the day before Plaintiff sent his second letter to Secretary Cate — it states that Plaintiff had already made "four attempts at appealing [his concerns about confiscation of religious property] by strictly following CDC and [LAC] appeal procedures."  But, according to the separate March 28, 2013 declaration Plaintiff prepared in opposing the instant motion, ECF No. 153, at 6, he had only submitted two appeals to LAC staff concerning the confiscation of his property by the time he prepared the Declaration — one on June 29, 2009, and one on September 29, 2009.  *See* Rupe Decl., ECF No. 153, at 6.  He did not submit his third and fourth appeals until December 11, 2009, and December 30, 2009, respectively.  *Id.*  Thus, his reference in the Declaration to having previously submitted four appeals concerning this issue – nearly two months before he filed his third appeal – suggests that the Declaration was not prepared on October 16, 2009, as it purports.

Third, the Declaration is not consistent with allegations in the SAC.  The Declaration states that of his "four attempts at appealing

[the confiscation of his property] by strictly following [CDCR] and [LAC] appeal procedures[,] [n]ot one of these appeals has been processed or returned." *Id.* at 12.   On the other hand, the SAC indicates that the final two appeals were actually received and returned by the LAC appeals coordinator "requesting documents the coordinator reasonably knew were [inaccessible] to Plaintiff." SAC ¶ 84.  These representations appear to be incompatible.

Fourth, the Declaration consists entirely of Plaintiff's own assertions that LAC staff did not process his appeal.  Plaintiff has not submitted copies of these appeals to the Court — which is puzzling, given that Plaintiff apparently retained and submitted copies to Secretary Cate on two separate occasions.  By themselves, Plaintiff's self-serving declarations and the two letters he submitted to Secretary Cate — neither of which identifies the nature of the grievances for which he sought review — do not provide sufficient evidence that LAC officials ignored his appeals concerning Defendant Bowen.   These documents do not satisfy Plaintiff's burden of demonstrating that administrative remedies was unavailable to him. *See Rodgers v. Reynaga*, No. CV 1-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009) (unpublished) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule.").

Finally, Plaintiff's claims that certain of his appeals were destroyed by LAC staff are not credible in light of his documented grievance history at LAC.  According to the unchallenged declaration

1   of N. Wilcox, the LAC appeals coordinator, Plaintiff submitted sixteen

2   other appeals between September 1, 2009, and December 30, 2009 — the

3   latter being the date he allegedly submitted his fourth and final

4   appeal concerning Defendant Bowen to LAC staff.  Wilcox Decl. ¶¶ 9–10,

5   ECF No. 151-4, at 3–4.  Two of those sixteen appeals were accepted for

6   review by the LAC Appeals Office, and both proceeded through Informal

7   and Level 1 Review during that time.  The remaining fourteen appeals

8   were screened and returned to Plaintiff for various reasons, such as

9   incompleteness, duplicativeness, lack of necessary documentation, and

10   lack of clarity.  In light of this documented history, Plaintiff's

11   assertion that only certain appeals were ignored — specifically, those

12   pertaining to Defendant Bowen and Plaintiff's confiscated property —

13   is not credible.

14        Plaintiff has not established that administrative remedies were

15   effectively unavailable for his claim against Defendant Bowen.  Even

16   if the Court accepted as true Plaintiff's allegation that LAC appeals

17   staff ignored Plaintiff's first two appeals, as he alleges, such

18   failure was remedied before Plaintiff filed suit; his two subsequent

19   December 11 and 30, 2009 appeals on the same issue were — by his own

20   admission — received, screened, and returned by LAC.  *See* SAC ¶ 84.

21   Plaintiff has submitted no evidence showing these appeals were

22   improperly screened or that he was unable to obtain and attach the

23   necessary documentation before resubmitting the appeals.  Plaintiff

24   has failed to meet his burden of showing that administrative remedies

25   were effectively unavailable for his claim against Defendant Bowen.

26   Accordingly, because Plaintiff failed to properly exhaust this claim

1   before he first asserted it in the FAC, ECF No. 51, the Court must

2   dismiss the claim.

3            b.   *Defendants Cash, Fortson, and Sebok*

4        The Cash Defendants also seek dismissal of the First, Second,

5   and Third Claims against Defendant Cash for failure to exhaust.   ECF

6   No. 155, at 9.   However, the SAC only asserts these claims against

7   Defendants Beard and Jackson.[14]   Accordingly, this portion of the Cash

8   Defendants' motion is denied as moot.

9        The Cash Defendants also seek dismissal of the Eighth Claim as

10  to Defendants Cash, Fortson, and Sebok.   In that claim, Plaintiff

11  asserts that these Defendants "created a prison program that uses

12  imaginary threats to security and [an] inadequate exercise yard

13  schedule [so] as to deprive Plaintiff of the basi[c] human need of

14  exercise [and] thereby inflicting Plaintiff with cruel and unusual

15  punishment."   SAC ¶ 128.   Although the parties apparently do not

16  dispute that this claim was fully exhausted through the third level of

17  CDCR review as of May 19, 2010, *see* Ex. 30 to Wilcox Decl., ECF No.

18  151-4, at 7-8, the Cash Defendants contend that the claim had not yet

19  been exhausted when the FAC was filed on February 24, 2010.

20       In response, Plaintiff argues that his failure to exhaust should

21  be excused based on the LAC appeal staff's untimely responses to his

22  appeal at the informal, first-level, and second-level review, as well

23  _____

24  [14] Defendant Beard, Secretary Cate's successor as Secretary of CDCR, was

25       substituted for Secretary Cate on March 6, 2013.   *See* Order, ECF No.

26       149.   The Court also dismissed these claims against Defendant Martel
         prior to directing service of the SAC.   *See* Order, ECF No. 103, at 2-3.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 41

as their initial improper screening of the appeal.[15]   As discussed below, Plaintiff's arguments fail for three reasons: 1) his appeal was timely addressed at all three levels of review; 2) his appeal was not improperly screened; and 3) in any event, at the time Plaintiff filed the FAC, he still had available avenues of administrative relief.

First, in contending that LAC appeals staff untimely responded to his appeal at various levels of review, Plaintiff apparently relies on a mistaken understanding of the time limits imposed by CDCR regulations for the processing of inmate appeals; he offers no citation to authority for his belief that shorter deadlines apply. *See* Rupe Decl., ECF No. 153, at 6.   Under the regulations setting forth these time limits, discussed above, LAC timely responded at each level of review.   And as to the second-level review, the Cash Defendants are correct that the LAC appeals staff is only required to provide an *estimated* completion date in their notice of delay.   *See* Cal. Code Regs. tit. 15 § 3084.6(b)(6).   The regulations do not require the review to actually be completed by the estimated date. *See id.* (imposing requirement of written notice of estimated completion date); *id.* § 3084.6(b)(5) (listing reasons why exception to regulatory deadlines is permitted, but not imposing any additional deadlines if one of the exceptions is found to apply).

---

[15] Based on the documents contained in Exhibit YY to Plaintiff's declaration, ECF No. 153, at 14-17, as well as Plaintiff's citation to Exhibit 30 of the declaration of N. Wilcox, ECF No. 151-4, at 6-22, all parties apparently agree that the LAC appeal at issue was assigned a log number of LAC-09-01235.   The Cash Defendants do not dispute that this appeal sufficiently addresses the substance of Plaintiff's Eighth Claim.

1        During the second-level review of Plaintiff's appeal, LAC

2   appeals staff timely notified Plaintiff on February 2, 2009 of a delay

3   in processing his appeal and provided him with an estimated completion

4   date of February 8, 2009.   The fact that the response was not

5   completed until February 9, 2009 — one day past the estimated

6   completion date — does not render the response untimely.

7        Second, Plaintiff fails to show that his appeal was improperly

8   screened.   The crux of Plaintiff's concern is that the LAC appeal

9   staff returned his informal appeal "multiple times requesting

10  documents that [he] did not possess and were in the exclusive control

11  of staff."   Rupe Decl., ECF No. 153, at 6-7.   The appeal record

12  submitted by the Cash Defendants contains several handwritten

13  notations, presumably from Plaintiff, indicating that he did not

14  understand what a "PSR" was — the document that LAC appeals staff

15  required him to submit before processing his appeal.   *See, e.g.*, Ex.

16  30 to Wilcox Decl., ECF No. 151-4, at 20.   However, the record also

17  indicates that within two weeks, Plaintiff had obtained a PSR – a

18  Program Status Report — and had submitted it with his informal appeal,

19  which was then processed.   *See id.* at 13-19.   Plaintiff then sought

20  ***and completed*** both first- and second-level review.   So even if the LAC

21  appeals staff's request for a PSR constituted improper screening, the

22  error was quickly rectified and Plaintiff thereafter proceeded with

23  several levels of administrative review before ever filing the FAC.

24  These facts do not show that Plaintiff was actually inhibited from

25  seeking administrative remedies due to the alleged improper screening.

26  //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 43

1    Finally, Plaintiff apparently does not dispute the Cash

2    Defendants' contention that his second-level appeal was completed (and

3    denied) on February 9, 2009. *See id.* at 11-12; Wilcox Decl. ¶ 9, ECF

4    No. 151-4, at 3; Rupe Decl., ECF No. 153, at 2.  The next day,

5    Plaintiff sought a third-level review.  Ex. 30 to Wilcox Decl., ECF

6    No. 151-4, at 10.  But on February 16, 2009 — a mere six days after

7    initiating the third-level review and nearly three calendar months

8    **before** receiving the results of that review — Plaintiff submitted his

9    FAC to the Court, asserting his grievance against Defendants Cash,

10   Fortson, and Sebok.[16]  Plaintiff has offered no justification for his

11   failure to await the results of the third-level review — which would

12   have properly exhausted his claim — before filing the FAC.  Like the

13   plaintiff in *Womack*, Plaintiff has failed to demonstrate that

14   administrative remedies were effectively unavailable at the time he

15   brought his claim; indeed, the undisputed evidence demonstrates that

16   such remedies were available and that Plaintiff was actively and

17   contemporaneously pursuing them.

18   Plaintiff has failed to meet his burden of showing that

19   administrative remedies were effectively unavailable for Eighth Claim

20   against Defendants Cash, Fortson, and Sebok.  Because Plaintiff failed

21   to properly exhaust this claim before he first asserted it in the FAC,

22   the Court must dismiss the claim.

23   //

24   //

25

26   [16] Although filed on February 24, 2010, the FAC is signed and dated
     February 16, 2010. *See* ECF No. 51, at 34.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 44

1

### c.   *Defendants Bradford, Beuchter, and Rushing*

2        Lastly, the Cash Defendants seek dismissal of the Eighth Claim

3   against Defendants Bradford, Beuchter, and Rushing.   In that claim,

4   Plaintiff asserts that these Defendants intentionally failed to place

5   him on the prison work assignments list and failed to "take [him] to

6   committee, subject[ing] [him] to further punishments within the cruel

7   and [unusual] punishment program."   SAC ¶ 130.

8        Although it appears that Plaintiff's claim was fully exhausted

9   through the third level of CDCR review as of September 10, 2010, *see*

10  Ex. 32 to Wilcox Decl., ECF No. 151-4, at 38-39, the Cash Defendants

11  contend that the claim had not yet been exhausted when Plaintiff filed

12  the FAC on February 24, 2010.   In response, Plaintiff contends that

13  his failure to exhaust should be because LAC failed to timely respond

14  to his informal appeal, and in fact, had still not responded by the

15  time he filed the FAC.[17]   The Cash Defendants assert, however, that

16  Plaintiff's administrative appeal did not sufficiently address the

17  merits of his claim against Defendants Bradford, Beuchter, and

18  Rushing, as asserted in the FAC, and that in any event, the delay in

19  responding to his appeal was not significant enough to render

20  administrative remedies effectively unavailable.

21        As to the Cash Defendant's first contention, the Court finds

22  that Plaintiff's informal appeal properly and sufficiently raised his

23  _____

24  [17] Based on the documents contained in Exhibit ZZ to Plaintiff's
    declaration, ECF No. 153, at 19, as well as Plaintiff's citation to

25  Exhibit 32 of the declaration of N. Wilcox, ECF No. 151-4, at 37-62, all

26  parties apparently agree that the LAC appeal at issue was assigned a log
    number of LAC-10-00475.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS   - 45

grievance.   In that appeal, Plaintiff was only required to "describe the problem and action requested."   Cal. Code Regs. tit. 15 § 3084.2(a).   Plaintiff's informal appeal stated that he was transferred to LAC "as a retaliation for filing a civil suit" and that he was "being intentionally barred from job assignments" while at LAC.   Ex. 32 to Wilcox Decl., ECF No. 151-4, at 54.   These statements are substantively identical to Plaintiff's allegations in the Eighth Claim against Defendants Bradford, Beuchter, and Rushing.

As to the issue of timeliness, the Cash Defendants do not dispute that LAC's response to Plaintiff's informal appeal was delayed without any notice or explanation.   They concede that Plaintiff's informal appeal was processed on January 12, 2010, and that the appeal was subject to a ten-working-day response requirement, necessitating a response by no later than January 27, 2010.   *See* Cash Defs.' Reply to Mot., ECF No. 155, at 10 (citing Cal. Code Regs. tit. 15, § 3084.6(b)(1)).   They further concede that LAC staff did not actually respond to the appeal until February 23, 2010, approximately one month (or eighteen working days) later.   *Id.*   The Cash Defendants characterize this delay as "minor," but in reality, the response to Plaintiff's informal appeal took nearly three times as long as CDCR regulations mandate.   Despite this delay, and in further violation of CDCR regulations, Plaintiff was apparently never provided with a notice of or justification for the delay.

On February 16, 2009 – after waiting twenty days for the overdue response to his informal appeal, and after receiving no notice of or reason for the delay – Plaintiff filed the FAC, asserting his claim

against Defendants Bradford, Beuchter, and Rushing.  At the time he did so, Plaintiff had exhibited a good-faith reasonable effort to administratively exhaust his grievance.  Although LAC appeals staff eventually responded to his informal appeal one week later, that subsequent remedial measure did not "unexhaust" Plaintiff's claim.  *See Kons v. Longoria*, No. 1:07-cv-00918-AWI-YNP, 2009 WL 3246367, at *4 (E.D. Cal. Oct. 6, 2009) (unpublished).  Accordingly, Plaintiff has sufficiently demonstrated that administrative remedies were effectively unavailable for his Eighth Claim against Defendants Bradford, Beuchter, and Rushing when he submitted the FAC on February 16, 2010.

**C.  Conclusion**

For the foregoing reasons, the Cash Defendants' motion is granted in part with respect to 1) dismissal of the Fourth Claim against Defendants Omeira and Bowen, and 2) dismissal of the Eighth Claim against Defendants Cash, Fortson, and Sebok.  The Cash Defendants' motion is denied as moot in part with respect to dismissal of the First, Second, and Third Claim against Defendant Cash, and denied in part with respect to dismissal of all claims against Defendants Bradford, Beuchter, and Rushing.

**V.   CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED**:

1.   The Martinez Defendants' Motion to Dismiss, **ECF No. 128**, is **GRANTED IN PART AND DENIED IN PART**.

2.   Plaintiff's Eighth Claim, insofar as it seeks monetary damages against Defendants Jackson and Williams in their

1    official capacities under § 1983, is **DISMISSED WITH**

2    **PREJUDICE**.

3    3.   Defendant Jackson is hereby substituted for Defendants Cash

4         and Fortson as to Plaintiff's Eighth Claim, insofar as it

5         seeks injunctive relief.

6    4.   The Cash Defendants' Motion to Dismiss, **ECF No. 151**, is

7         **GRANTED IN PART, DENIED AS MOOT IN PART, AND DENIED IN**

8         **PART.**

9    5.   Plaintiff's Fourth Claim against Defendants Omeira and

10        Bowen is **DISMISSED WITHOUT PREJUDICE**.  The Clerk's Office

11        is directed to **TERMINATE** Defendants Omeira and Bowen as

12        parties to this action.

13   6.   Plaintiff's Eighth Claim against Defendants Cash, Fortson,

14        and Sebok is **DISMISSED WITHOUT PREJUDICE**.  The Clerk's

15        Office is directed to **TERMINATE** Defendants Cash, Fortson,

16        and Sebok as parties to this action.

17   **IT IS SO ORDERED.**   The Clerk's Office is directed to enter this

18   Order and provide copies to Mr. Rupe and to defense counsel.

19   **DATED** this  3rd  day of June 2013.

20

                                s/ Edward F. Shea
21   _____
                                EDWARD F. SHEA
                          Senior United States District Judge
22

23

24

25

26

C:\Windows\Temp\notes87944B\08.2454.dismiss2.gip.lc2.docx

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS
TO DISMISS  - 48