1

2

3

4

5                      UNITED STATES DISTRICT COURT

                       EASTERN DISTRICT OF CALIFORNIA
6
                           SACRAMENTO DIVISION
7

8   PAUL ANTHONY RUPE,                    No.  CV-08-2454-EFS (PC)

                         Plaintiff,
9                                         **ORDER GRANTING DEFENDANTS' MOTION**
          v.                              **FOR SUMMARY JUDGMENT**
10
    JEFFREY BEARD, in his official
11  capacity of the
    California Department of
12  Corrections and Rehabilitation,
    et al.,
13
                         Defendants.
14

15              **I.   <u>INTRODUCTION</u>**

16       Before the Court, without oral argument, is Defendants' Motion

17  for Summary Judgment, ECF No. 164.   Defendants seek summary judgment

18  on Plaintiff's claims against them.   Also pending before the Court is

19  the related matters of Plaintiff's Motion to Strike, ECF No. 166, and

20  Defendants' Nunc Pro Tunc Leave to Exceed Page Limit, ECF No. 167.

21       Having reviewed the parties' submissions and the record in this

22  matter, and having consulted the applicable authority, the Court is

23  fully informed.   For the reasons set forth below, the Court grants

24  Defendants' Motion for Summary Judgment, ECF No. 164, grants

25  Defendants' Nunc Pro Tunc Leave to Exceed Page Limit, ECF No. 167, and

26  denies Plaintiff's Motion to Strike, ECF No. 166.

ORDER  - 1

1                          II.   **BACKGROUND**

2    **A.   Factual History**[1]

3          Plaintiff, an incarcerated inmate in the custody of the

4    California Department of Corrections and Rehabilitation ("CDCR"), is a

5    practicing Druid.  Druidry is a neo-pagan religion that revives the

6    beliefs and practices of the druids — the religious and educational

7    leaders in ancient Gaul.  Plaintiff has communicated with the Order of

8    Bards, Ovates, and Druids ("OBOD"), a Druid organization based in

9    England, from which he obtained correspondence courses to aid his

10   spiritual development.  He has completed several OBOD educational

11   courses related to Druidry, and he has written articles and attained

12   various titles and honorifics within his chosen religious order.

13   Druidry is Plaintiff's sincerely held religious belief.

14         Plaintiff voluntarily associated with members of other Pagan

15   denominations while incarcerated at Mule Creek State Prison ("MCSP").

16   On March 17, 2007, he wrote to California State Senator Gloria Romero,

17   requesting various items necessary for Pagan religious worship.  A

18   copy of the letter was given to Defendant Subia, the MCSP warden.  On

19   the same day, Plaintiff filed an administrative grievance with MCSP

20   officials in which he requested accommodations for Pagan worship,

21   including a request for a sweathouse, fire pit, religious land, and

22   _____

23         [1]   In ruling on the motion for summary judgment, the Court has considered

24         the facts and all reasonable inferences therefrom as contained in the
           submitted affidavits, declarations, exhibits, and depositions, in the

25         light most favorable to the party opposing the motion — here, the

26         Plaintiff.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.
           1999).

ORDER  - 2

religious herbs and oils. MCSP officials held a hearing on Plaintiff's grievance on April 2, 2007. At the hearing, Defendant Long — an associate MCSP warden — informed Plaintiff that MCSP would approve the Pagan group's practices and would grant them a worship area, however the grounds provided were not large enough to accommodate the large number of Pagan inmates at once.

On June 1, 2007, Plaintiff submitted a Religious Review Committee (RRC) request regarding the limitations that Plaintiff believed were being placed on his religion. On June 6, 2007, Defendants Takehara and Lockhart searched Plaintiff's cell in connection with their investigation of a note threatening an assault on Mule Creek staff by members of Kekau Ya Aset (HYA), to which Plaintiff belonged. On June 10, 2007, Plaintiff filed an inmate grievance requesting the ability to purchase oils, herbs, prayer stones, and crystals, and requesting a fence, fire pit, and sweathouse for the Pagan religious grounds. In response Plaintiff was informed these requests for unauthorized religious items need to go through the RRC.

On June 14, 2007, Plaintiff was placed in administrative segregation. On September 18, 2007, after an investigation was completed, Plaintiff was found guilty of a Rule Violation Report (RVR) in connection with the note threatening Mule Creek staff members by HYA.

On November 15, 2007, Defendant Bueno and Green did not allow non-Wiccans to use the Pagan religious grounds. Plaintiff and the Druids were required to hold group worship on the general population

yard.   Between November 2007 and September 2008, Plaintiff sent multiple request to the RRC requesting food for religious feasts, religious grounds to accommodate more inmates, a sweathouse, fire pit, and approval of some religious items.   On February 25, 2009, the RRC reviewed Plaintiff's requests and decided that only Native Americans could use the sweathouse.   On March 17, 2009, Plaintiff was informed that MCSP personnel had been served with his complaint.   Defendant Allen told building staff on April 7, 2009, that the Druids were no longer a recognized religious group.   On April 15, 2009, Defendant Martel issued a memorandum stating that MCSP would no longer provide food for any prisoner religious celebrations.   On May 6, 2009, Plaintiff was advised that he was being considered for a transfer to the California State Prison in Lancaster ("LAC").   Plaintiff objected to the transfer on numerous procedural and substantive grounds.   The UCC hearing stated the transfer was recommended because of the conversion of Mule Creek yards that made them incompatible with Level three and four inmates.   On June 17, 2009, Plaintiff was transferred to LAC.   On July 22, 2009, Plaintiff attended his initial ICC hearing and was placed on the waiting list to work as support staff.   In March 2013, Plaintiff was transferred back to Mule Creek from LAC.

**B.   Procedural History**

Plaintiff filed his initial Complaint on October 16, 2008, ECF No. 1, and the Amended Complaint on July 24, 2009, ECF No. 31.   On February 1, 2010, the Court granted in part and denied in part Defendants' motion to dismiss.   ECF No. 48.   On February 24, 2010, Plaintiff filed another amended complaint, captioned as the First

Amended Complaint ("FAC"), ECF No. 51.  Defendants answered the FAC on June 15, 2010.  ECF No. 68.  On October 13, 2011, the Court denied Plaintiff's motion for summary judgment, motion for leave to conduct third-party discovery, and motion to compel discovery.  ECF No. 96.

On December 14, 2011, Plaintiff filed the now-operative complaint, captioned as the Second Amended Complaint ("SAC"), ECF No. 101.  Defendants answered the SAC on February 16, 2012.  ECF No. 105. The SAC asserts nine claims and names thirty-eight individual Defendants.  On January 26, 2012, the Court screened the SAC pursuant to 28 U.S.C. § 1915A.  ECF No. 103.  After partially dismissing several of Plaintiff's claims for mootness, the Court directed service of the remaining claims.  On August 15, 2012, and March 25, 2013, Defendants moved to dismiss various claims.  ECF Nos. 128 & 151.  On June 3, 2013, the Court granted dismissal of the Fourth Claim against Defendants Omeira and Bowen and granted dismissal of the Eighth Claim against Defendants Cash, Fortson, and Sebok.  ECF No. 157.  On September 12, 2013, the Defendants filed for summary judgment.  ECF No. 164.

### III. PLAINTIFF'S MOTION TO STRIKE

Plaintiff seeks to strike Defendants' Motion for Summary Judgment, ECF No. 164, as Defendants' brief exceeded the page limits set in Local Rule 56.1 and 7.1.  Under Local Rule 7.1, Defendants' brief was twenty-three pages long, when the limit was twenty pages. Plaintiff notes that before filing the over-length brief Defendants' did not seek leave of the Court.  However, on October 9, 2013, Defendants filed a nunc pro tunc request for leave to exceed the page

1  limit, stating they had inadvertently filed the brief compliant with

2  the Eastern District of California Local Rules, but not complaint with

3  the Eastern District of Washington Local Rules, and requested leave be

4  granted.  Ultimately, the Court finds good cause for permitting an

5  over-length brief, as the brief, which was three pages over length,

6  addressed nine claims against thirty-one Defendants, which was

7  necessary to adequately address all the issues.  Accordingly,

8  Plaintiff's Motion to Strike is denied and Defendants' request to

9  exceed the page limit is granted.

10  **IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

11  Defendants seek summary judgment on Plaintiff's nine claims for

12  relief under the Religious Land Use and Institutionalized Persons Act

13  (RLUIPA) and the Civil Rights Act (§ 1983).

14  **A.  Legal Standards**

15  Summary judgment is appropriate if the "movant shows that there

16  is no genuine dispute as to any material fact and the movant is

17  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

18  Once a party has moved for summary judgment, the opposing party must

19  point to specific facts establishing that there is a genuine dispute

20  for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If

21  the nonmoving party fails to make such a showing for any of the

22  elements essential to its case for which it bears the burden of proof,

23  the trial court should grant the summary judgment motion.  *Id.* at 322.

24  "When the moving party has carried its burden under Rule [56(a)], its

25  opponent must do more than simply show that there is some metaphysical

26  doubt as to the material facts. . . . [T]he nonmoving party must come

forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted) (emphasis in original).

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.   Discussion**

   1.   <u>RLUIPA</u>

Plaintiff alleges Defendants Beard and Jackson, in their official capacity, violated his right to practice his religion under RLUIPA.  However, as Plaintiff acknowledges in his Notice of Claims to Be Adjudicated, ECF No. 161, Plaintiff is no longer housed at LAC making the injunctive relief sought against Jackson moot.

As to Defendant Beard, Plaintiff bears the initial burden of persuasion on whether the "government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C.A. § 2000cc-2.  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a) (2012).  "While [RLUIPA] adopts a 'compelling governmental interest' standard, '[c]ontext matters' in

the application of that standard." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).   Courts are expected to apply RLUIPA's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723.   RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."   § 2000cc-5(7)(A).   RLUIPA does not define "substantial burden," but the Ninth Circuit has held that in the context of a prisoner's constitutional challenge to institutional policies a substantial burden occurs "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir.2005) (alteration in original) (quotation omitted).

Here, Plaintiff fails to make any showing that his religious exercise was so burdened as to pressure him to abandon his beliefs. Plaintiff continues to have the opportunity to pray, use his Tarot cards, purchase some religious oils and herbs, and have group worship. Rather than being pressured to abandon his religious belief, Plaintiff seeks additional religious accommodations beyond those already provided by the prison, namely sweathouse ceremonies and six yearly feasts.   Accordingly, Plaintiff fails to demonstrate a substantial burden under RLUIPA.

//

2.   § 1983 Claims

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Liability for a violation will not arise from *respondeat superior* liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-92 (1978). A causal link between a person holding a supervisorial position and the claimed constitutional violation must be shown; vague and conclusory allegations are insufficient. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

The Court takes up each of the alleged violations in turn.

a.   *First Amendment, Free Exercise*

Plaintiff alleges Defendants Jackson, Beard, Barnham, Baptista, Muhammed, Kuric, Long, Lackner, R. Bueno, Green, Lockhart, Takehara,

Martel, Subia, and Knipp violated his First Amendment right to freedom of religion.    The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1974).  A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration.  *Id*. at 348.  To prevail on his Free Exercise Claim, Plaintiff must show the government denied him "a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  It is well-settled that the First Amendment does not require prison administration to provide inmates with the religious provisions of their choice.  *Id*. at 322 n. 2 ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.").

Here, as to Defendants Beard and Jackson, Plaintiff alleges they violated his First Amendment rights by failing to enforce or implement a number of new policies.  *See* ECF No. 101 at 27.  However, Beard and Jackson are supervisory officials and Plaintiff has not demonstrated any facts showing they, either through policies enacted or actions not taken, deprived Plaintiff of his First Amendment rights.  In fact, the record shows that at all times Plaintiff could, and did, avail himself of the RRC to voice his concerns and seek accommodations for his practices.

//

1    Defendants Barnham, Baptista, Muhammed, Kuric, Long and Lackner,
2    members of the RRC, allegedly failed to recognize Druidry as a
3    religious practice.  However, Plaintiff does not show how the RRCs
4    actions denied him a reasonable opportunity to pursue his faith
5    comparable to the opportunity afforded fellow prisoners.  While at
6    Mule Creek, Plaintiff did have access to some oils and herbs, could
7    read his tarot cards, pray, could attend group worship, and was even
8    let out of the yard with other Druids prior to the general population.
9    Accordingly, Plaintiff has not demonstrated how the RRCs actions or
10   inactions deprived him of any First Amendment right.

11   Next, as to Defendants Martinez, Texeira, Machado, Knipp, Long,
12   Vanni, and Martel, Plaintiff concedes that Texeira, Knipp, and Vanni
13   were not present at the transfer meeting.  Accordingly, those claims
14   are dismissed.  As to Defendants Martinez, Machado, Long, and Martel,
15   the Plaintiff fails to show how the UCC's acknowledgement that
16   Plaintiff was up for transfer by the ICC, and then was not actually
17   transferred, in any way impacted his ability to practice his religion.

18   Plaintiff also alleges that Defendants Long, Bueno, and Baptista
19   violated his First Amendment rights by ordering him to reduce the
20   number of Pagan practitioners.  However, the request to Plaintiff that
21   the provided space was not large enough to accommodate all the Pagan
22   inmates at one time, did not tell Plaintiff he could not attend or
23   that he could not practice his religion.  Accordingly, the Court finds
24   no violation that could arise from this request as to Plaintiff's
25   First Amendment rights.
26   //

ORDER  - 11

1    Defendants Bueno and Green allegedly violated Plaintiff First

2   Amendment rights by ordering Plaintiff off of the Pagan grounds due to

3   limited space and security concerns.   However, Plaintiff was still

4   provided with the opportunity to worship with a group on the general

5   population yard.   In *Cruz,* the Supreme Court stated that "[a] special

6   chapel or place of worship need not be provided for every faith

7   regardless of size."   Cruz, 405 U.S. at 322 n. 2.   Accordingly, the

8   Court finds that Defendants, in providing Plaintiff an area for group

9   worship, just not the specific area Plaintiff desired, did not violate

10  his First Amendment rights.

11    On June 6, 2007, Defendants Lockhart and Takehara searched

12  Plaintiff's cell taking a number of items.   However, Plaintiff does

13  not demonstrate how, the search of his cell due to an ongoing

14  investigation of threats against the prison staff, in any way affected

15  his ability to practice his religion.

16    Finally, Plaintiff alleges Defendants Martel, Subia, Long, and

17  Knipp violated his First Amendment rights by being aware of the

18  actions of their direct subordinates but actively ignored their

19  actions.   However, Plaintiff has not demonstrated a causal link

20  between these supervisors and the claimed constitutional violations.

21  *See Fayle*, 607 F.2d at 862.   Accordingly, Plaintiff's claim fails.

22    Ultimately, the Court finds nothing in the record before it to

23  support the contention that Defendants denied Plaintiff a reasonable

24  opportunity of pursuing his faith comparable to the opportunity

25  afforded fellow prisoners.   Therefore, Plaintiff's claim is dismissed.

26  //

1              b.    *Fourteenth Amendment, Equal Protection*

2       Plaintiff alleges Defendants Beard, Jackson, Barnham, Baptista,

3  Muhammed, Kuric, Long, Lackner, Martinez, Teixera, Machado, Knipp,

4  Long, Vanni, Martel, R. Bueno, Green, Lockhart, and Takehara violated

5  his Fourteenth Amendment right to Equal Protection by treating other

6  religions differently from Druidry.

7       The Equal Protection Clause requires the State to treat all

8  similarly situated people equally.  *See City of Cleburne v. Cleburne*

9  *Living Ctr.*, 473 U.S. 432, 439 (1985).  This does not mean, however,

10 that all prisoners must receive identical treatment and resources.

11 *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *Ward v. Walsh*, 1 F.3d

12 873, 880 (9th Cir. 1993); *Allen v. Toombs*, 827 F.2d 563, 568–69 (9th

13 Cir. 1987) (affirming summary judgment against Native American

14 prisoners' Equal Protection claim because "the prison administration

15 is not under an affirmative duty to provide each inmate with the

16 spiritual counselor of his choice").  To prevail on an Equal

17 Protection claim brought under § 1983, Plaintiff must show that "the

18 defendants acted with an intent or purpose to discriminate against

19 [him] based upon membership in a protected class."  *See Thornton v.*

20 *City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005).

21      First, like his Free Exercise claim, Plaintiff argues the

22 request to reduce the number of Pagan practitioners, his removal from

23 Pagan grounds, and the searching of his cell amount to an equal

24 protection violation.  However, Plaintiff does not evidence how he is

25 being treated differently from any other prisoner when space within

26 the prison is limited or when a prisoner is suspected of involvement

in threats to staff members.   Additionally, he has presented no

evidence to indicate a discriminatory purpose for these actions.

Second, as the members of the ICC and UCC, Plaintiff concedes

that "Defendants Texeira, Knipp, and Vanni are dropped from this

claim" and that "[t]his is not an equal protection claim." ECF No.

166 at 11.   Accordingly, the Court dismisses the Equal Protection

claim against the ICC and UCC Defendants.

Finally, Plaintiff maintains that the prison supervisors and

members of the RRC failed to provide Pagan Chaplains, lands for Druid

practices, or sweathouses, amounting to an Equal Protection violation.

However, like in *Toombs*, here, the fact that Druids do not have a paid

Chaplain is not a violation of the Equal Protection clause, as

Plaintiff is allowed to receive help with religious issues from other

paid Chaplains working at CDCR.   Additionally, nothing presented by

the Plaintiff indicates that Defendants have, or would, deny him

access to a volunteer Druid Chaplain if one was available.   Lastly,

Plaintiff acknowledges that the RRC did review and ultimately rejected

his request for land and a sweathouse.   ECF No. 166 at 28.   While

Native Americans are provided a sweathouse, all inmates are not

entitled to receive "identical treatment and resources."   *See Hartmann

v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

Plaintiff has not demonstrated that the denial by the RCC of his

request to have a separate sweathouse[2] was based solely on his

---

[2]  Plaintiff acknowledges there is no alternative to the construction of a
separate sweathouse noting the Native Americans' sweathouse is
considered sacred.

ORDER  - 14

religious beliefs and not upon the RCC's concern for the use of limited prison resources.

In the end, Plaintiff while providing evidence that Defendants knew he was a Druid, has not demonstrated that the purpose of any disparate treatment he allegedly received was due to his being a Druid.  Accordingly, his claim is dismissed.

c.   *First Amendment, Freedom of Speech/Retaliation*

Plaintiff claims that Defendants Martinez, Texeira, Machado, Knipp, Long, Vanni, Martel, V. Bueno, Rutherford, Takehara, Chamberlain, Burkard, Green, R. Bueno, Kudlata, Allen, Rathjen, Reaves, Nakanoto, Bradford, Beuchter, and Rushing violated the First Amendment by retaliating against him to chill his speech.

Prisoners may not be retaliated against for exercising their right of access to the courts, which extends to access to established prison grievance procedures.  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  However, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Id*. (quoting *Sandin*, 515 U.S. at 482).  To state a retaliation claim, a plaintiff must allege five basic elements: "1) an assertion that a state actor took some adverse action

against an inmate 2) because of 3) that prisoner's protected conduct, and that such action 4) chilled the inmate's exercise of his First Amendment Rights, and 5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Legitimate penological goals include preserving institutional order, discipline, and security. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). Retaliation is not established simply by showing adverse activity after the occurrence of protected speech, but rather a plaintiff must show a nexus between the two events. *Husky v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). An inmate claiming retaliation must allege that the actions caused some injury, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), and has the burden of pleading and proving the absence of legitimate correctional goals for the alleged conduct. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

Here, the Plaintiff has failed to meet this burden. First, Plaintiff maintains the members of the UCC and ICC committees retaliated against him by placing him up for transfer. Aside from the fact that he was not transferred after these 2007 hearings, Plaintiff fails to establish that being put up for transfer was because of his religious beliefs and not for the legitimate penological goal of maintaining security in the facility. Next, Plaintiff maintains that Defendants placed him into administrative segregation in retaliation for his religious beliefs and filing of grievances. However, aside from the fact that the segregation occurred after the filing of

grievances, Plaintiff fails to show any nexus between the administrative segregation and his religious beliefs.

Additionally, Plaintiff further alleges retaliation by Defendant Rutherford and Defendant Allen by having to undergo strip searches and having his cousin placed into a holding cell. However, these conclusory allegations are not support by evidence demonstrating a connection between these events and his religious beliefs, other than that they occurred after complaining about religious services, which is insufficient to maintain a retaliation claim.

Finally, Plaintiff alleges that Defendants further retaliated against him by removing him from the Pagan grounds, transferring him to LAC, and failing to place him on the assignment list. However, the evidence shows he was removed because of space limitations, was transferred due to yard conversion at Mule Creek, and was placed on the waiting list for assignment to the support staff. Plaintiff has provided nothing but conclusory allegations that these events had any nexus to his religious beliefs or grievances.

Ultimately, Plaintiff fails to demonstrate how any of Defendants' actions were actually retaliatory because of his religious beliefs or grievances, and not for a legitimate penological goal. Accordingly, Plaintiff's retaliation claims are dismissed.

> d. _Fourteenth Amendment, Due Process_

Plaintiff alleges that Defendants Rutherford, V. Bueno, and Kudlata, violated his due process rights under the Fourteenth Amendment. Procedural due process claims require (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a

denial of adequate procedural protections.   *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001).   In the context of a disciplinary proceeding where a liberty interest is at stake, due process requires that "some evidence" support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).   The inmate must also receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id*. at 454.   However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Here, Plaintiff's allegations are 1) that Rutherford threatened to charge him with misconduct if he did not accuse another, 2) V. Bueno falsely charged him with misconduct, and 3) Kudlata failed to provide him with an impartial hearing officer.   However, Plaintiff fails to establish the he was not provided adequate procedural protection before being placed in administrative segregation.   While Plaintiff maintains that he was charged with false reports, the Due Process Clause does not make one free from false accusations, but merely provides procedural protections to defend against false accusations.   Accordingly, Plaintiff's claim that his due process rights were violated is dismissed.

//

e.   *Fourth Amendment, Unlawful Search and Seizure*

Plaintiff argues that Defendants Lockhart, Takehara, and Rutherford violated his Fourth Amendment right to be free from unreasonable searches and seizures by searching his cell in connection with an ongoing investigation into threats against prison staff. The U.S. Supreme Court has held, however, that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). An inmate has no "reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." *Id.* at 519. The Supreme Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* at 528 n.8. Here, the Court finds that Plaintiff did not have a reasonable expectation of privacy in his prison cell. Accordingly, Plaintiff Fourth Amendment claim is dismissed.

f.   *Eighth Amendment, Cruel and Unusual Punishment/Deliberate Indifference*

Finally, Plaintiff alleges that Defendants Rathjen, Bennett, Reaves, Nakanoto, Bradford, Beuchter, and Rushing violated his Eighth Amendment rights. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The failure of prison officials to protect inmates from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the

prison official is, subjectively, deliberately indifferent to inmate safety. *Id*. at 834. A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id*. at 837. Neither negligence nor gross negligence will constitute deliberate indifference. *Id*. at 835-36 & n.4.

Here, Plaintiff maintains that Defendants either transferred him to LAC knowing he would be subject to cruel or unusual punishment at LAC or did not place Plaintiff on the assignment list so that he could be given a work assignment. However, Plaintiff has failed to demonstrate any evidence that could show that any Defendant was subjectively aware of a risk to Plaintiff's safety. Accordingly, Plaintiff has not demonstrated any violations of his Eight Amendment rights.

## C.   Conclusion

For the foregoing reasons, taking the evidence in the light most favorable to the Plaintiff, the Plaintiff failed to demonstrate that a violation of his constitutional rights or the RLUIPA occurred. Accordingly, the Court grants Defendants' Motion for Summary Judgment.

**V.   CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion for Summary Judgment, **ECF No. 164**, is **GRANTED**.

2.   Defendants' Nunc Pro Tunc Leave to Exceed Page Limit, **ECF No. 167**, is **GRANTED**.

3.   Plaintiff's Motion to Strike, **ECF No. 166**, is **DENIED**.

4.   The Clerk's Office is directed to enter **JUDGMENT** in Defendants' favor with prejudice.

5.   All pending deadlines and hearings are **STRICKEN**.

6.   The Clerk's Office shall **CLOSE** this file.

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to Mr. Rupe and to defense counsel.

**DATED** this  23rd  day of December 2013.


                    s/ Edward F. Shea
                    _____
                    EDWARD F. SHEA
                    Senior United States District Judge